1   LEWIS S. KAHN
    KAHN SWICK & FOTI, LLC
2   650 Poydras Street, Suite 2150
    New Orleans, LA 70130
3   Telephone: (504) 455-1400
    Facsimile: (504) 455-1498
4   lewis.kahn@kgscounsel.com

5   REED R. KATHREIN (139304)
    PETER E. BORKON (212596)
6   HAGENS BERMAN SOBOL SHAPIRO LLP
    715 Hearst Avenue, Suite 202
7   Berkeley, CA 94710
    Telephone: (510) 725-3000
8   Facsimile: (510) 725-3001
    reed@hbsslaw.com
9   peterb@hbsslaw.com

10  Attorneys for Plaintiff

**FILED**

NOV 1 8 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**BZ**

11

12                          UNITED STATES DISTRICT COURT

13                       NORTHERN DISTRICT OF CALIFORNIA

                                          **CV 09    5488**

14  CHENGXIAO CAO, Individually and On Behalf  )   No.
    of All Others Similarly Situated,,         )
15                                             )   **CLASS ACTION COMPLAINT**
                              Plaintiff,        )   **FOR VIOLATIONS OF**
16                                             )   **FEDERAL SECURITIES LAWS**
          v.                                    )
17                                             )
    SUNPOWER CORPORATION,                      )   **JURY TRIAL DEMANDED**
18  PRICEWATERHOUSECOOPERS LLP,                )
    THOMAS H. WERNER, DENNIS V.                )
19  ARRIOLA, EMMANUEL T. HERNANDEZ,            )
    and MARTY T. NEESE,                        )
20                                             )
                              Defendants.       )
21  _____     )

22

23

24

25

26

27

28

339416 V1

1                               **INTRODUCTION**

2         This is a federal class action on behalf of purchasers of the common stock of SunPower,

3 Corp. ("SunPower" or the "Company") between April 17, 2008, and November 16, 2009, inclusive

4 (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the

5 "Exchange Act"). As alleged herein, Defendants published a series of materially false and

6 misleading statements which Defendants knew and/or deliberately disregarded were false and

7 materially misleading at the time of such publication, and which omitted to reveal material

8 information necessary to make Defendants' statements, in light of such material omissions, not

9 materially false and misleading.

10                               **OVERVIEW**

11 1.     Throughout the Class Period, SunPower was engaged in the design, manufacture, and

12 marketing of solar electric power technologies, including solar cells, solar panels, and inverters,

13 which convert sunlight to electricity for the utility networks serving installers and resellers for use

14 in residential and commercial applications.

15 2.     Throughout the Class Period, SunPower presented itself as a company that was achieving

16 substantial growth in revenues and earnings, and had significant cost controls in place. Throughout

17 this time, Defendants issued a series of results that both raised forward guidance and reported

18 purported "record-setting" financial and operational results for the periods. Defendants also filed

19 with the SEC quarterly and year-end financial reports that also reported this purported record

20 growth and strong financial results.

21 3.     In addition, throughout the Class Period, Defendants also represented to analysts and

22 Investors that the Company was operating at or above plan, and that SunPower was successfully

23 achieving and even out-performing guidance sponsored and endorsed by Defendants. In addition to

24 the foregoing, during the Class Period, Defendants repeatedly highlighted the Company's cost

25 management abilities and consistently reported that the Cost of Revenues was well within such

26 guidance.

27 4.     Either the representations concerning these systems and controls were patently untrue, or

28 the systems and controls themselves were providing Defendants with information throughout the

CLASS ACTION COMPLAINT             - 1 -

Class Period which they knew or deliberately disregarded to be in stark contrast to the statements concerning the Company's strength and profitability. Accordingly, unbeknownst to investors, throughout the Class Period the Company was suffering from a host of undisclosed adverse factors which were negatively impacting its business and which would cause it to report declining financial results, materially less than the market expectations Defendants had created and cultivated. In particular:

*     At all times during the Class Period, it was not true that the Company's purported success was the result of the Company's cost controls or Defendants' competent management when, in fact, throughout the Class Period, Defendants had propped up the Company's results by manipulating SunPower's accounting for cost of revenues and operating expenses.

*     At all times during the Class Period, unbeknownst to investors, Defendants had materially overstated the Company's profitability by under-reporting SunPower's rising revenue costs and costs of goods, by failing to make proper, timely adjustments to the Company's stated reports.

*     Throughout the Class Period, it was also not true that SunPower contained adequate systems of internal operational or financial controls, such that SunPower's reported financial statements were true, accurate, or reliable.

*     As a result of the foregoing, throughout the Class Period it also was not true that the Company's financial statements and reports were prepared in accordance with GAAP ad SEC rules.

*     As a result of the aforementioned adverse conditions which Defendants failed to disclose, throughout the Class Period, Defendants lacked any reasonable basis to claim that SunPower was operating according to plan, or that SunPower could achieve guidance sponsored and/or endorsed by Defendants.

5.     It was only at the end of the Class Period, however, that investors ultimately learned that the Company was operating far below expectations and that SunPower had significantly under-reported the true cost of goods sold. In fact, it was only on November 16, 2009, that investors first learned that the Company would be forced to restate its financial results for the first three quarters of 2009 and all the reported periods of 2008. These sudden and shocking disclosures had an immediate impact on the price of SunPower stock and shares of the Company declined approximately $5.00 per share in the single trading day, falling over 20%, and closing at just over $22.00 per share.

6. Defendants were motivated to and did conceal the true operational and financial condition of SunPower, and materially misrepresented and failed to disclose the conditions that were adversely affecting SunPower throughout the Class Period, because it enabled them to: (i) deceive the investing public regarding SunPower's business, operations, and management and the intrinsic value of SunPower common stock; (ii) register for sale and sell hundreds of millions of dollars in SunPower stock on behalf of the Company and its early stage investors; (iii) enable certain SunPower insiders, several of which are named as Defendants herein, to sell tens of millions of dollars of their privately-held SunPower shares while in possession of material adverse non-public information about the Company; and (v) cause Plaintiff and other members of the Class to purchase SunPower common stock at artificially inflated prices.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

9. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). SunPower maintains its principal place of business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

10. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

### Plaintiff

11. Plaintiff Chengxiao Cao, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of SunPower at artificially inflated prices during the Class Period and has been damaged thereby.

**Corporate Defendant**

12. Defendant **SUNPOWER, CORP.** is a Delaware corporation with its principal place of business at 3939 North First Street, San Jose, CA 95134. According to the Company's profile, SunPower engages in the design, manufacture, and marketing of solar electric power technologies, including: solar cells, solar panels, and inverters, which convert sunlight to electricity for the utility networks serving installers and resellers for use in residential and commercial applications; power systems and system technologies, which include development, engineering, and procurement of permits and equipment; and construction management, access to financing, monitoring, and maintenance services.

**Auditor Defendant**

13. Auditor Defendant **PRICEWATERHOUSECOOPERS LLP ("PWC")** served as the Company's purported Independent Outside Auditor throughout the Class Period. During that time, Defendant PWC aided and assisted in the preparation of the Company's financial reports and SEC filings and, in connection with the filing of the Company's 2008 Form 10-K, Defendant PWC provided a Report of Independent Accountants that certified the completeness and correctness of the Company's reported financial statements and operational reports.

**Individual Executive Defendants**

14. Defendant **THOMAS H. WERNER** ("Werner" or "Tom Werner") is, and during the relevant period was, Chief Executive Officer of the Company. During the Class Period, Defendant Werner signed and/or certified the Company's SEC filings, including but not limited to SunPower's Form(s) 10-Q and 2008 Form 10-K and/or the materially false and misleading Registration Statements and joint Prospectus issued in connection with the registration and sale of Company stock.

15. Defendant **DENNIS V. ARRIOLA** ("Arriola") is, and during the Class Period became, Chief Financial Officer, Principal Accounting Officer, and Senior Vice President of the Company. During the Class Period, Defendant Arriola signed and/or certified the Company's SEC filings, including but not limited to SunPower's Form(s) 10-Q and 2008 Form 10-K and/or the materially

CLASS ACTION COMPLAINT                    - 4 -

339416 V1

false and misleading Registration Statements and joint Prospectus issued in connection with the registration and sale of Company stock.

16. Defendant **EMMANUEL T. HERNANDEZ** ("Hernandez") was, during the Class Period until the time of his unscheduled departure from the Company on or about November 2008, Chief Financial Officer, Principal Accounting Officer, and Senior Vice President of the Company. During the Class Period, Defendant Hernandez signed and/or certified the Company's SEC filings, including but not limited to SunPower's Form(s) 10-Q and 2008 Form 10-K and/or the materially false and misleading Registration Statements and joint Prospectus issued in connection with the registration and sale of Company stock.

17. Defendant **MARTY T. NEESE** ("Neese") is, and during was during the Class Period became, Chief Operating Officer Company, responsible for leading global strategic operations and worldwide materials sourcing, and overseeing the execution of the Company's solar cell fabrication plant in Malaysia. During the Class Period, Defendant Neese assisted in the preparation of the Company's SEC filings, including but not limited to SunPower's Form(s) 10-Q and 2008 Form 10-K and/or the materially false and misleading Registration Statements and joint Prospectus issued in connection with the registration and sale of Company stock.

18. The Defendants referenced above in ¶¶ 14 - 17 are referred to herein as the "Individual Defendants."

19. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets, and present and future business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets, and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and *via* reports and other information provided to them in connection therewith.

20. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading, and incomplete information conveyed in the Company's public filings, press releases, and other publications as alleged herein are the collective actions of the

CLASS ACTION COMPLAINT - 5 -

1  narrowly defined group of Defendants identified above. Each of the above officers of SunPower,

2  by virtue of their high-level positions with the Company, directly participated in the management

3  of the Company, was directly involved in the day-to-day operations of the Company at the highest

4  levels, and was privy to confidential proprietary information concerning the Company and its

5  business, operations, products, growth, financial statements, and financial condition, as alleged

6  herein. Said Defendants were involved in drafting, producing, reviewing, and/or disseminating the

7  false and misleading statements and information alleged herein, were aware, or deliberately

8  disregarded, that the false and misleading statements were being issued regarding the Company,

9  and approved or ratified these statements, in violation of the federal securities laws.

10  21.    As officers and controlling persons of a publicly-held company whose common stock was,

11  and is, registered with the SEC pursuant to the Exchange Act, and was traded on the Nasdaq

12  National Market Exchange (the "Nasdaq"), and governed by the provisions of the federal securities

13  laws, the Individual Defendants each had a duty promptly to disseminate accurate and truthful

14  information with respect to the Company's financial condition and performance, growth,

15  operations, financial statements, business, products, markets, management, earnings, and present

16  and future business prospects, and to correct any previously-issued statements that had become

17  materially misleading or untrue, so that the market price of the Company's publicly-traded

18  common stock would be based upon truthful and accurate information. The Individual Defendants'

19  misrepresentations and omissions during the Class Period violated these specific requirements and

20  obligations.

21  22.    The Individual Defendants participated in the drafting, preparation, and/or approval of the

22  various public and shareholder and investor reports and other communications complained of

23  herein and were aware of, or deliberately disregarded, the misstatements contained therein and

24  omissions therefrom, and were aware of their materially false and misleading nature. Because of

25  their Board membership and/or executive and managerial positions with SunPower, each of the

26  Individual Defendants had access to the adverse undisclosed information about SunPower's

27  business prospects and financial condition and performance as particularized herein and knew (or

28  deliberately disregarded) that these adverse facts rendered the positive representations made by or

1  about SunPower and its business issued or adopted by the Company materially false and
2  misleading.

3  23.    The Individual Defendants, because of their positions of control and authority as officers
4  and/or directors of the Company, were able to and did control the content of the various SEC
5  filings, press releases, and other public statements pertaining to the Company during the Class
6  Period. Each Individual Defendant was provided with copies of the documents alleged herein to be
7  misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to
8  prevent their issuance or cause them to be corrected. Accordingly, each of the Individual
9  Defendants is responsible for the accuracy of the public reports and releases detailed herein and is
10  therefore primarily liable for the representations contained therein.

11  24.    Each of the Defendants is liable as a participant in a fraudulent scheme and course of
12  business that operated as a fraud or deceit on purchasers of SunPower common stock by
13  disseminating materially false and misleading statements and/or concealing material adverse facts.
14  The scheme: (i) deceived the investing public regarding SunPower's business, operations, and
15  management and the intrinsic value of SunPower common stock; (ii) enabled Defendants to
16  register for sale and sell hundreds of millions of dollars in SunPower stock on behalf of the
17  Company and its early stage investors; (iii) enabled SunPower insiders, certain of which are named
18  as Defendants herein, to sell tens of millions of dollars of their privately held SunPower shares
19  while in possession of material adverse non-public information about the Company; and (v) caused
20  Plaintiff and other members of the Class to purchase SunPower common stock at artificially
21  inflated prices.

22  <center>**PLAINTIFF'S CLASS ACTION ALLEGATIONS**</center>

23  25.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure
24  23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired
25  the common stock of SunPower between April 17, 2008, and November 16, 2009, inclusive (the
26  "Class") and who were damaged thereby. Excluded from the Class are Defendants, the officers and
27  directors of the Company, at all relevant times, members of their immediate families and their legal

28

1  representatives, heirs, successors, or assigns and any entity in which Defendants have or had a

2  controlling interest.

3  26.     The members of the Class are so numerous that joinder of all members is impracticable.

4  Throughout the Class Period, SunPower common shares were actively traded on the Nasdaq. As of

5  October 28, 2009, the Company had over 54.94 million shares of Class A common stock and 42.03

6  million shares of Class B common stock issued and outstanding. While the exact number of Class

7  members is unknown to Plaintiff at this time and can only be ascertained through appropriate

8  discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed

9  Class. Record owners and other members of the Class may be identified from records maintained

10 by SunPower or its transfer agent and may be notified of the pendency of this action by mail, using

11 the form of notice similar to that customarily used in securities class actions.

12 27.     Plaintiff's claims are typical of the claims of the members of the Class as all members of

13 the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is

14 complained of herein.

15 28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has

16 retained counsel competent and experienced in class and securities litigation.

17 29.     Common questions of law and fact exist as to all members of the Class and predominate

18 over any questions solely affecting individual members of the Class. Among the questions of law

19 and fact common to the Class are:

20         (a)     whether the federal securities laws were violated by Defendants' acts as

21 alleged herein;

22         (b)     whether statements made by Defendants to the investing public during the

23 Class Period misrepresented material facts about the business, operations and management of

24 SunPower; and

25         (c)     to what extent the members of the Class have sustained damages and the

26 proper measure of damages.

27 30.     A class action is superior to all other available methods for the fair and efficient

28 adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

339416 V1

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False and Misleading
### Statements Made During the Class Period

31. **1Q:08 Results Announced**. On April 17, 2008, the inception of the Class Period, SunPower published a release announcing results for the first quarter ended March 30, 2008 and raising guidance for the remainder of 2008. This release also stated, in part, the following:

**SunPower Reports First-Quarter 2008 Results**

**Company Raises FY 2008 Guidance**

- Generated first quarter 2008 revenue of $274 million, up 92% year-on-year
- Achieved $0.15 GAAP net income share, $0.39 Non-GAAP
- Extended VAR dealer network by more than 50 dealers in Germany, Italy and Spain
- Expanded relationships to further penetrate both the Japanese and Korean markets
- Received silicon from M.Setek and DC Chemical on target

SAN JOSE, Calif., April 17, 2008 /PRNewswire-FirstCall via COMTEX News Network/ -- SunPower Corporation (Nasdaq: SPWR) today announced financial results for the first quarter 2008, which ended March 30, 2008. This press release contains both GAAP and non-GAAP financial information. Non-GAAP figures are reconciled to the closest GAAP equivalent figures on the final page of this press release. Please note that the company has posted additional, supplemental information related to its first quarter 2008 performance on the Events and Presentations section of the Investor Relations page on the SunPower website.

Revenue for the 2008 first quarter was $273.7 million, up 22% from prior-quarter revenue of $224.3 million and up 92% from year-ago first-quarter revenue of $142.3 million. The Components and Systems segments accounted for 35% and 65% of first-quarter revenue, respectively.

32. In addition to the foregoing, the Company's April 17, 2008 release also provided purported guidance, in part, as follows:

CLASS ACTION COMPLAINT — 9 —

1

2    On a GAAP basis, SunPower reported gross margin of 19.5%, total operating
     income of $14.8 million and diluted net income per share of $0.15. These figures

3    include non-cash operating expenses for amortization of purchase accounting
     intangible assets of $4.3 million and non-cash, stock-based compensation of $14.5

4    million. Additionally, for the three months ended March 30, 2008, GAAP cost of
     revenue includes $2.2 million of one-time asset impairment charges relating to the

5    discontinuation of our imaging detector product line and $3.3 million for write-offs
     of certain solar manufacturing equipment which became obsolete due to new

6    processes.

7    33.   In addition to the foregoing, this release also quoted Defendant Werner, who provided

8    increased forward guidance for the remainder of the year, in part, as follows:

9    "Based on the strong demand trends we saw in the first quarter of 2008, we are
     raising our guidance for the fiscal year 2008 and expect the following non-GAAP

10   results: Total revenue of $1.3 billion to $1.375 billion, diluted net income per share
     of $2.10 to $2.20. We are also reconfirming our 2009 forecast for total revenue to

11   increase at least 40% from 2008 levels. Consistent with our practice of offering
     guidance for the current quarter, we expect second quarter of 2008 non-GAAP total

12   revenue of $330 million to $350 million, company non-GAAP gross margin of 23%
     to 24% and non-GAAP diluted net income per share of $0.48 to $0.52, reflecting a

13   higher non-GAAP average tax rate of 24% to 25% in 2008 as compared to the tax
     rate in 2007 which ended at 11.0%(1).

14

15   "On a business segment basis, we expect the following non-GAAP results for the
     second quarter 2008: Components segment revenue of $95 million to $100 million,
     driven by a planned increase in allocation of SunPower panels to the Systems

16   segment, and gross margin of 30.5% to 31.5%; Systems segment revenue of $235
     million to $250 million and gross margin of 20% to 21%," said Werner. "We expect

17   the Components segment to benefit from the continued manufacturing ramp of our
     next-generation technology and lower silicon cost and the Systems segment to

18   benefit from an increase in allocation of SunPower panels to the segment during the
     quarter(2)."

19                                        * * *

20   (1) For the full year 2008, we expect the following total company GAAP results:
     Revenue of $1.3 billion to $1.375 billion and diluted net income per share of $1.10

21   to $1.20. For the second quarter of 2008, we expect the following total company
     GAAP results: Revenue of $330 million to $350 million; gross margin of

22   approximately 21 percent to 22 percent and diluted net income per share of $0.24 to
     $0.28, reflecting a higher GAAP average tax rate of 33% to 34% in 2008.

23

24   (2) For the second quarter of 2008, we expect the Components business segment to
     generate GAAP revenue of $95 million to $100 million and gross margin of
     approximately 28 percent to 29 percent and the Systems business segment to

25   generate GAAP revenue of $235 million to $250 million and gross margin of
     approximately 18.5 percent to 19.5 percent.

26

     34.   This release also quoted Defendant Werner, in part, as follows:
27
     "Our first quarter performance reflects the value our customers attribute to
28   SunPower's high-performance solar solutions," said Tom Werner, SunPower's CEO.

     CLASS ACTION COMPLAINT                    - 10 -

     339416 V1

1    "SunPower's market leadership will continue to be driven through our focus on
     brand, technology, cost and people. *We are building a strong brand based on*
2    *sound fundamentals:* the world's highest performance solar technology, deployed
     aggressively across the leading global markets using scalable, responsive channel
3    platforms.

* * *

4    "SunPower is positioned to meet the needs of the market with industry-leading solar
     technology across the entire customer spectrum -- from large-scale systems
5    designed for utilities and large commercial clients to homeowners. Our proprietary
     technology delivers the highest output per unit area of any commercially available
6    solar system and we intend to leverage this technology by aggressively expanding
     our solar cell production by more than 150% in 2008 compared to 2007. This scale,
7    combined with lower silicon costs, higher efficiencies, thinner wafers and on-going
     quality and cost improvements in our factories, will drive unit cost reduction.
8    *During the first quarter of 2008, we continued to meet or exceed our*
     *manufacturing targets across both of our fabs and our panel manufacturing*
9    *facility….*

10                                    * * *

11   *"We expect SunPower's silicon supply costs to decline by approximately 10%*
     *during 2008 compared to 2007."* continued Werner. "This cost improvement will
12   amplify our silicon utilization benefits achieved through higher cell efficiency and
     thinner wafers. *We are on track to achieve our planned improvements in our cost*
13   *structure, and therefore we expect to reach our target financial model of 30%*
     *gross margin, 10% operating expenses and 20% operating margin, on a non-*
14   *GAAP basis, no later than the first quarter of 2009.* We are also on track to realize
     our mission of reducing installed systems cost by 50% by 2012.

15   35.    **1Q:08 Form 10-Q.** Later, on or about May 9, 2008, Defendants filed with the SEC the
16
     Company's 1Q:08 Form 10-Q, for the quarter ended March 30, 2009, signed by Defendant
17
     Hernandez and certified by Defendants Werner and Hernandez. In addition to making substantially
18
     similar statements concerning the Company operations, revenue costs, and expense ratios, the
19
     Company's 1Q:08 Form 10-Q also stated, in part, the following:
20
     **Basis of Presentation**
21
22   The accompanying condensed consolidated interim financial statements have been
     prepared pursuant to the rules and regulations of the Securities and Exchange
23   Commission ("SEC") regarding interim financial reporting. The year-end
     Condensed Consolidated Balance Sheets data was derived from audited financial
24   statements. Accordingly, these financial statements do not include all of the
     information and footnotes required by generally accepted accounting principles for
25   complete financial statements and should be read in conjunction with the Financial
     Statements and notes thereto included in the Company's Annual Report on Form
26   10-K for the year ended December 30, 2007.

                                     * * *

27   In the opinion of management, the accompanying condensed consolidated financial
     statements contain all adjustments, consisting only of normal recurring adjustments,
28   which the Company believes are necessary for a fair statement of the Company's

1     financial position as of March 30, 2008 and its results of operations for the three-
2     month periods ended March 30, 2008 and April 1, 2007 and its cash flows for the
    three-month periods ended March 30, 2008 and April 1, 2007....

3   36.   **Cost of Revenues.** The 1Q:08 Form 10-Q also reported the Company's purported Cost of

4   Revenue (as a percentage of revenue and the year-over-year change) for its two segments, as

5   follows:

| (Dollars in thousands) | Three Months Ended | | Year-over-Year Change |
|---|---|---|---|
| | March 30, 2008 | April 1, 2007 | |
| of systems revenue | $ 143,213 | $ 62,443 | 129% |
| of components revenue | 77,168 | 47,479 | 63% |
| Total cost of revenue | $ 220,381 | $ 109,922 | 100% |
| l cost of revenue as a percentage of revenue | 81% | 77% | |
| l gross margin percentage | 19% | 23% | |

| (Dollars in thousands) | Systems Segment Three Months Ended | | | Components Segment Three Months Ended | | |
|---|---|---|---|---|---|---|
| | March 30, 2008 | April 1, 2007 | Year-over-Year Change | March 30, 2008 | April 1, 2007 | Year-over-Year Change |
| ortization of purchased intangible assets | $ 2,168 | $ 4,946 | (56%) | $ 1,044 | $ 1,123 | (7%) |
| k-based compensation | 2,511 | 1,997 | 26% | 1,203 | 253 | 375% |
| airment of long-lived assets | 1,343 | — | n.a. | 4,146 | — | n.a. |
| ory pre-operating costs | 267 | — | n.a. | 386 | 1,216 | (68%) |
| other cost of revenue | 136,924 | 55,500 | 147% | 70,389 | 44,887 | 57% |
| Total cost of revenue | $ 143,213 | $ 62,443 | 129% | 77,168 | 47,479 | 63% |
| l cost of revenue as a percentage of revenue | 80% | 80% | | 81% | 74% | |
| l gross margin percentage | 20% | 20% | | 19% | 26% | |

      During the three months ended March 30, 2008 and April 1, 2007,
our total cost of revenue was $220.4 million and $109.9 million,
respectively. The 100% increase in total cost of revenue during the
three-month period ended March 30, 2008 compared to the same
period of 2007 resulted from increased costs in all cost of revenue
spending categories and corresponds with a 92% increase in revenue
during the same period.

      As a percentage of total revenue, our total cost of revenue increased
to 81% in the first quarter of fiscal 2008 compared to 77% in the first
quarter of fiscal 2007. This increase in total cost of revenue as a
percentage of total revenue is reflective of increased costs of raw

1    materials, particularly polysilicon, and one-time asset impairment
     charges of $5.5 million relating to the wind down of our imaging
2    detector product line  and for the write-down of certain solar product
     manufacturing equipment which became obsolete due to new
3    processes. In addition, during the first quarter of fiscal 2007, our
     systems segment gross margin was substantially higher than in the
4    first quarter of fiscal 2008 as a result of a more favorable mix of
     business than is typical of this business. This favorable mix of
5    business improved our overall gross margin for the fiscal quarter
     ended April 1, 2007 by approximately six percentage points above
6    what we expected for our systems segment. In addition, during the
     first quarter of fiscal 2007, we received a $2.7 million settlement
7    from one of our suppliers in the components segment in connection
     with defective materials sold to us during 2006. This settlement was
8    reflected as a reduction to total cost of revenue in the fiscal quarter
     ended April 1, 2007. The additional cost of revenue in the first
9    quarter of fiscal 2008 was only partially offset by improved
     manufacturing economies of scale associated with markedly higher
10   production volume and improved yields.

11   37.    **Controls.** In addition to the foregoing, the Company's 1Q:08 Form 10-Q also contained

12   statements regarding the sufficiency and adequacy of the Company's Controls and Procedures that

13   stated, in part, the following:

14   **Controls and Procedures**

15   **Evaluation of Disclosure Controls and Procedures**

16       We maintain "disclosure controls and procedures," as such term is defined in Rules
         13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended
17       (the "Exchange Act"), that are designed to ensure that information required to be
         disclosed by us in reports that we file or submit under the Exchange Act is recorded,
18       processed, summarized, and reported within the time periods specified in Securities
         and Exchange Commission rules and forms, and that such information is
19       accumulated and communicated to our management, including our Chief Executive
         Officer and Chief Financial Officer, as appropriate, to allow timely decisions
20       regarding required disclosure. In designing and evaluating our disclosure controls
         and procedures, management recognized that disclosure controls and procedures, no
21       matter how well conceived and operated, can provide only reasonable, not absolute,
         assurance that the objectives of the disclosure controls and procedures are met.
22       Additionally, in designing disclosure controls and procedures, our management
         necessarily was required to apply its judgment in evaluating the cost-benefit
23       relationship of possible disclosure controls and procedures. The design of any
         disclosure controls and procedures also is based in part upon certain assumptions
24       about the likelihood of future events, and there can be no assurance that any design
         will succeed in achieving its stated goals under all potential future conditions.

25
         Based on their evaluation as of the end of the period covered by this Quarterly
26       Report on Form 10-Q and subject to the foregoing, our Chief Executive Officer and
         Chief Financial Officer have concluded that our disclosure controls and procedures
27       were effective.

28

CLASS ACTION COMPLAINT                              - 13 -

339416 V1

38.     **Certifications.** In addition to the foregoing, the Company's 1Q:08 Form 10-Q also

contained certifications by Defendants Werner and Hernandez that attested to the purported

accuracy and completeness of the Company's financial and operational reports as well as

statements concerning the Company's controls and procedures, as follows:

## CERTIFICATIONS

1.      I have reviewed this Quarterly Report on Form 10-Q of SunPower
Corporation;

2.      Based on my knowledge, this report does not contain any untrue statement
of a material fact or omit to state a material fact necessary to make the statements
made, in light of the circumstances under which such statements were made, not
misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial
information included in this report, fairly present in all material respects the
financial condition, results of operations and cash flows of the registrant as of, and
for, the periods presented in this report;

4.      The registrant's other certifying officer(s) and I are responsible for
establishing and maintaining disclosure controls and procedures (as defined in
Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial
reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the
registrant and have:

(a)      Designed such disclosure controls and procedures, or caused such
disclosure controls and procedures to be designed under our supervision, to ensure
that material information relating to the registrant, including its consolidated
subsidiaries, is made known to us by others within those entities, particularly during
the period in which this report is being prepared;

(b)      Designed such internal control over financial reporting, or caused such
internal control over financial reporting to be designed under our supervision, to
provide reasonable assurance regarding the reliability of financial reporting and the
preparation of financial statements for external purposes in accordance with
generally accepted accounting principles;

(c)      Evaluated the effectiveness of the registrant's disclosure controls and
procedures and presented in this report our conclusions about the effectiveness of
the disclosure controls and procedures, as of the end of the period covered by this
report based on such evaluation; and

(d)      Disclosed in this report any change in the registrant's internal control over
financial reporting that occurred during the registrant's most recent fiscal quarter
(the registrant's fourth fiscal quarter in the case of an annual report) that has
materially affected, or is reasonably likely to materially affect, the registrant's
internal control over financial reporting; and

5.      The registrant's other certifying officer(s) and I have disclosed, based on our
most recent evaluation of internal control over financial reporting, to the registrant's
auditors and the audit committee of the registrant's board of directors (or persons

CLASS ACTION COMPLAINT                          - 14 -

339416 V1

1  performing the equivalent functions):

2  (a)        All significant deficiencies and material weaknesses in the design or
operation of internal control over financial reporting which are reasonably likely to
3  adversely affect the registrant's ability to record, process, summarize and report
financial information; and

4
(b)        Any fraud, whether or not material, that involves management or other
5  employees who have a significant role in the registrant's internal control over
financial reporting.

6

7  Date: May 9, 2008

8          / S / T HOMAS H. W ERNER
Thomas H. Werner
9          Chief Executive Officer
(Principal Executive Officer)

10
* * *

11
Date: May 9, 2008

12
/ S / E MMANUEL T. H ERNANDEZ
13         Emmanuel T. Hernandez
Chief Financial Officer
14         (Principal Financial and Accounting Officer)

15
**CERTIFICATION OF CHIEF EXECUTIVE OFFICER AND
16         CHIEF FINANCIAL OFFICER PURSUANT TO
18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO
17         SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

18  In connection with the quarterly report of SunPower Corporation (the "Company")
on Form 10-Q for the period ended March 30, 2008 as filed with the Securities and
19  Exchange Commission on the date hereof (the "Report"), each of Thomas H.
Werner, Chief Executive Officer, and Emmanuel T. Hernandez, Chief Financial
20  Officer, of the Company, certifies, pursuant to 18 U.S.C. Section 1350, as adopted
pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of his
21  knowledge and belief:

22  (1)    The Report fully complies with the requirements of Section 13(a) or 15(d) of
the Securities Exchange Act of 1934; and

23
(2)    The information contained in the Report fairly presents, in all material
24  respects, the financial condition and result of operations of the Company.

25  Dated: May 9, 2008

26         / S / T HOMAS H. W ERNER
Thomas H. Werner
27         Chief Executive Officer
(Principal Executive Officer)

28

/ S / E MMANUEL T. H ERNANDEZ
Emmanuel T. Hernandez
Chief Financial Officer
(Principal Financial and Accounting Officer)

In connection with the quarterly report of SunPower Corporation (the "Company") on Form 10-Q for the period ended March 30, 2008 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), each of Thomas H. Werner, Chief Executive Officer, and Emmanuel T. Hernandez, Chief Financial Officer, of the Company, certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of his knowledge and belief:

(1)     The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)     The information contained in the Report fairly presents, in all material respects, the financial condition and result of operations of the Company.

Dated: May 9, 2008

/ S / T HOMAS H. W ERNER
Thomas H. Werner
Chief Executive Officer
(Principal Executive Officer)

/ S / E MMANUEL T. H ERNANDEZ
Emmanuel T. Hernandez
Chief Financial Officer
(Principal Financial and Accounting Officer)

39.     The statements contained in SunPower's April 17, 2008 release and those statements contained in the Company's 1Q:08 Form 10-Q, referenced above, were each materially false and misleading when made, and were known by Defendants to be false or were deliberately disregarded as such thereby, for the following reasons, among others:

(a)     At all times during the Class Period, it was not true that the Company's purported success was the result of the Company's cost controls or Defendants' competent management when, in fact, throughout the Class Period, Defendants had propped up the Company's results by manipulating SunPower's accounting for cost of revenues and operating expenses;

(b)     At all times during the Class Period, unbeknownst to investors, Defendants had materially overstated the Company's profitability by under-reporting SunPower's rising

1  revenue costs and costs of goods, by failing to make proper, timely adjustments to the Company's

2  stated reports;

3          (c)     Throughout the Class Period, it was also not true that SunPower contained

4  adequate systems of internal operational or financial controls, such that SunPower's reported

5  financial statements were true, accurate or reliable;

6          (d)     As a result of the foregoing, throughout the Class Period it also was not true

7  that the Company's financial statements and reports were prepared in accordance with GAAP ad

8  SEC rules; and

9          (e)     As a result of the aforementioned adverse conditions which Defendants

10 failed to disclose, throughout the Class Period, Defendants lacked any reasonable basis to claim

11 that SunPower was operating according to plan, or that SunPower could achieve guidance

12 sponsored and/or endorsed by Defendants.

13 40.     **Investment Presentations**. With shares of the Company trading at prices artificially

14 inflated by the publication of Defendants' materially false and misleading statements, in the days

15 and weeks following the filing of the Company's 1Q:08 Form 10-Q Defendants also organized or

16 participated in live investor conferences that were also designed to and did artificially inflate and

17 maintain the price of SunPower's shares. These included presentations by Defendant Werner and

18 others, at the following locations and times:

19      *       On May 19, 2008 Defendants announced that Julie Blunden, Vice President of
                Public Policy and Corporate Communications, would present at two upcoming
20              investor events, including the 36th Annual JPMorgan Technology Conference at the
                Westin Boston Waterfront Hotel in Boston, Massachusetts on May 21st, and the 6th
21              Annual Wedbush Morgan Stanley Securities Management Access Conference on
                May 22nd, at Le Parker Meridien Hotel in New York City
22
        *       On June 3, 2008 Defendants announced that Tom Werner, SunPower's CEO, would
23              deliver a presentation at the Jefferies 5th Global Clean Technology Conference in
                New York City on June 5, and that Werner would also present at the Renewable
24              Energy Finance Forum (REFF) at the Waldorf Astoria Hotel in New York City, on
                June 18.
25
        *       At the same time, the Company also announced that Bob Okunski, Senior Director
26              of Investor Relations for SunPower Corp., would also speak at the Thomas Weisel
                Partners Alternative Energy Conference 2008 at the Mandarin Oriental Hotel in
27              New York City, on June 12.

28

CLASS ACTION COMPLAINT                          - 17 -

339416 V1

41.    **2Q:08 Results Announced**. On July 17, 2008, SunPower published a release announcing results for the second quarter ended June 29, 2008 and again raised guidance for the remainder of the year. In part, this release also stated the following:

**SunPower Reports Record Second-Quarter 2008 Results**

**Company Raises FY 2008 and FY 2009 Guidance**

-    Generated second quarter 2008 revenue of $382.8 million, up 120% year-on-year

-    Achieved $0.34 GAAP net income per share, $0.61 non-GAAP

-    Announced agreement with Florida Power & Light in July for two projects totaling 35 megawatts

-    Began site preparation for a 1 gigawatt solar cell fab in Malaysia

-    On track with 50% cost reduction plan, Q2 reductions in cell, module, materials and systems costs

-    More than 300 dealers worldwide serving the residential and small-commercial rooftop market

-    Announced world-record 23.4% efficient, full-scale prototype Gen 3 solar cell

-    Announced the appointment of Marty Neese as chief operating officer

SAN JOSE, Calif., July 17, 2008 /PRNewswire-FirstCall via COMTEX News Network/ -- SunPower Corporation (Nasdaq: SPWR) today announced financial results for the second quarter 2008, which ended June 29, 2008. This press release contains both GAAP and non-GAAP financial information. Non-GAAP figures are reconciled to the closest GAAP equivalent figures on the final page of this press release. Please note that the company has posted additional, supplemental information related to its second quarter 2008 performance on the Events and Presentations section of the Investor Relations page on the SunPower website at www.sunpowercorp.com.

42.    In addition to the foregoing, the Company's July 17, 2008 release also provided purported guidance, in part provided by Defendant Werner, as follows:

"With the decline in our silicon costs, further improvements in our manufacturing efficiency and continued progress in reducing downstream installation costs, we remain on track to achieve our target financial model of 30% gross margin, 10% operating expenses and 20% operating margin, on a non-GAAP basis, no later than the first quarter of 2009. We are also on track to realize our mission of reducing installed systems cost by 50% from 2006 to 2012.

"Based on the strong demand trends in both existing and emerging markets and continued progress on our 50 percent reduction in installed system costs, we are raising our guidance for the fiscal year 2008 and expect the following non-GAAP

results: Total revenue of $1.39 billion to $1.44 billion and diluted net income per share of $2.26 to $2.36. We also expect our 2009 total revenue to be in of the range of $2.0 billion to $2.1 billion, production capacity of 450+ megawatts and non-GAAP diluted net income per share of at least $3.50. Consistent with our practice of offering guidance for the current quarter, we expect third quarter 2008 non-GAAP total revenue of $340 million to $355 million, company non-GAAP gross margin of 26.5% to 27.5% and non-GAAP diluted net income per share of $0.53 to $0.57.(1)

"On a business segment basis, we expect the following non-GAAP results for the third quarter 2008: Components segment revenue of $155 million to $160 million, and gross margin of 33.5% to 34.5%; Systems segment revenue of $185 million to $195 million and gross margin of 21.5% to 22%. We expect the Components segment to benefit from the continued manufacturing ramp of our next-generation technology and lower silicon cost and the Systems segment to reflect a combination of changes in project and regional mix.(2)

"For the fourth quarter of 2008, we expect non-GAAP total revenue of $395 million to $425 million, reflecting an anticipated increase in both our Components and Systems segment revenue, company non-GAAP gross margin of 29% to 30%, in line with the company's long-term model, and non-GAAP diluted net income per share of $0.73 to $0.80. For the fourth quarter 2008, we expect Components segment revenue of $200 million to $210 million, and gross margin of 35% to 36% and Systems segment revenue of $195 million to $215 million and gross margin of 23% to 23.5%," concluded Werner.(3)

* * *

(1) For the full year 2008, we expect the following total company GAAP results: Revenue of $1.39 billion to $1.44 billion and diluted net income per share of $1.16 to $1.26. For the full year 2009, we expect the following total company GAAP results: Revenue of $2.0 billion to $2.1 billion and diluted net income per share of at least $2.36. For the third quarter of 2008, we expect the following total company GAAP results: Revenue of $340 million to $355 million; gross margin of approximately 24.0 percent to 25.0 percent and diluted net income per share of approximately $0.26 to $0.30.

(2) For the third quarter of 2008, we expect the Components business segment to generate GAAP revenue of $155 million to $160 million and gross margin of approximately 30.2 percent to 31.2 percent and the Systems business segment to generate GAAP revenue of $185 million to $195 million and gross margin of approximately 19.3 percent to 19.8 percent.

(3) For the fourth quarter of 2008, we expect the following total company GAAP results: Revenue of $395 million to $425 million; gross margin of approximately 26.2 percent to 27.2 percent and diluted net income per share of $0.40 to $0.47. For the fourth quarter of 2008, we expect the Components business segment to generate GAAP revenue of $200 million to $210 million and gross margin of approximately 31.8 percent to 32.8 percent and the Systems business segment to generate GAAP revenue of $195 million to $215 million and gross margin of approximately 20.7 percent to 21.2 percent.

43.    In addition to the foregoing, this release also quoted Defendant Werner, in part, as follows:

"In 2008, SunPower has achieved the geographic and market segment diversity that provides us with tremendous flexibility to respond to new opportunities and

1
2
3
4
5

minimize risk, such as the uncertainty our industry currently faces in the U.S. and Spanish markets," said Tom Werner, SunPower's CEO. "We have built the infrastructure to deliver our high-efficiency solar technology to customers on four continents from residential rooftops to large- scale utility systems. With our Gen 2 cell lines ramping and further expansion of our manufacturing capabilities, we are beginning to tap unserved demand for our high-efficiency solar systems in Korea, Japan, Australia, Germany, Italy, and neighboring areas in Europe. The overall global business environment remains very favorable as we continue to execute on our long-term strategy focused on brand, technology, cost and people. We are well-positioned for success entering the second half of the year.

6
7
8
9
10
11
12
13

"In the second quarter, SunPower benefitted from strong customer demand across multiple geographies including our Systems business segment. In addition to our power plant installations in Spain, we saw the dedication of a 1.4 megawatt project in Korea as well as the announcement of our framework agreement with Enfinity Management SPRL to supply 25 megawatts of projects in Italy by the end of 2009. Demonstrating SunPower's ability to offer solar at utility-scale, we announced an agreement with Florida Power & Light (FPL) for the largest photovoltaic power plant in the United States. Our agreements with FPL include both a 25 megawatt plant in DeSoto County, Fla., as well as a 10 megawatt plant at the Kennedy Space Center. Our power plant customers value SunPower's delivery of the highest-efficiency solar panels, high-energy collection systems technology, a decade of large-scale systems deployment experience, and a low levelized cost of energy (LCOE).

14
15
16

"In our Components business segment, we continued to see strong demand worldwide. We more than doubled the number of our European dealers and further grew our dealer base in the United States. SunPower now has more than 300 dealers worldwide serving the residential and small-commercial rooftop market. Our multi-channel approach, vertically integrated business model and diversified customer base gives us a competitive advantage and will enable us to capitalize on the further adoption of solar as an alternative to conventional electricity generation.

17
18
19
20
21

"SunPower continued to extend its technology lead during the quarter as we announced our world-record, 23.4 percent efficiency, prototype Generation 3 solar cell. This technology, expected to be in production in approximately two years, is *a key element in our roadmap to reduce total systems costs to compete with wholesale and retail electric rates by 2012. Also, in order to meet expected future demand and scale economies to reach our cost reduction goals,* SunPower announced plans to build its third solar cell manufacturing facility in Malaysia which, when completed, will have a nameplate capacity in excess of 1 gigawatt.

22
23
24
25

*"Our cost reduction plans are on target for silicon procurement as well. We saw our silicon unit costs materially decline in the second quarter as we started to realize the benefit of our portfolio approach to silicon supply,"* continued Werner. "With all of our silicon suppliers delivering according to contract, *we expect our silicon supply costs to continue to decline and remain fully contracted for our silicon needs through 2010...*

26
27
28

44.     **Investment Presentations**. With shares of the Company trading at prices artificially

inflated by the publication of Defendants' materially false and misleading statements, in the days

and weeks following the filing of the Company's 2Q:08 Form 10-Q Defendants also organized or

participated in live investor conferences that were also designed to and did artificially inflate and

maintain the price of SunPower's shares. These included presentations by Defendant Hernandez

and others, at the following locations and times, including:

*      On July 31, 2008, Defendants announced that Manny Hernandez, SunPower's CFO, would deliver a presentation at the Pacific Crest Technology Leadership Forum 10th Anniversary at the Sonnenalp Resort in Vail, Colorado on August 4.

*      On July 31, 2008, Defendants also announced that Julie Blunden, Vice President of Public Policy and Corporate Communications for SunPower, will speak at the RBC Capital Markets 2008 Technology, Media & Communications Conference at the Four Seasons Hotel in San Francisco, California on August 6, and would also address the Canaccord Adams 28th Annual Global Growth Conference at the Intercontinental Hotel in Boston, Massachusetts, on August 13.

45.      **2Q:08 Form 10-Q.** Later, on or about August 11, 2008, Defendants filed with the SEC the

Company's 2Q:08 Form 10-Q, for the quarter ended June 29, 2008, signed by Defendant

Hernandez and certified by Defendants Werner and Hernandez. In addition to making substantially

similar statements concerning the Company operations, revenue costs, and expense ratios, the

Company's 2Q:08 Form 10-Q also stated, in part, the following:

**Basis of Presentation**

> The accompanying condensed consolidated financial statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC") regarding interim financial reporting. The year-end Condensed Consolidated Balance Sheets data was derived from audited financial statements. Accordingly, these financial statements do not include all of the information and footnotes required by generally accepted accounting principles for complete financial statements and should be read in conjunction with the Financial Statements and notes thereto included in the Company's Annual Report on Form 10-K for the year ended December 30, 2007.

>             * * *

> In the opinion of management, the accompanying condensed consolidated financial statements contain all adjustments, consisting only of normal recurring adjustments, which the Company believes are necessary for a fair statement of the Company's financial position as of June 29, 2008 and its results of operations for the three and six months ended June 29, 2008 and July 1, 2007 and its cash flows for the six months ended June 29, 2008 and July 1, 2007. These condensed consolidated financial statements are not necessarily indicative of the results to be expected for the entire year.

339416 V1

46. **Cost of Revenues.** The 2Q:08 Form 10-Q also reported the Company's purported Cost of Revenue (as a percentage of revenue and the year-over-year change) for its two segments, as follows:

| (Dollars in thousands) | Three Months Ended | | | | Six Months Ended | | |
|---|---|---|---|---|---|---|---|
| | June 29, 2008 | July 1, 2007 | Year-over-Year Change | | June 29, 2008 | July 1, 2007 | Year-over-Year Change |
| : of systems revenue | $ 209,137 | $ 91,518 | 129% | | $ 352,350 | $ 153,984 | 129% |
| : of components revenue | 80,584 | 52,456 | 54% | | 157,752 | 99,912 | 58% |
| Total cost of revenue | $ 289,721 | $ 143,974 | 101% | | $ 510,102 | $ 253,896 | 101% |
| il cost of revenue as a percentage of revenue | 76% | 83% | | | 78% | 80% | |
| il gross margin percentage | 24% | 17% | | | 22% | 20% | |

| (Dollars in thousands) | Systems Segment | | | | Components Segment | | |
|---|---|---|---|---|---|---|---|
| | Three Months Ended | | | | Three Months Ended | | |
| | June 29, 2008 | July 1, 2007 | Year-over-Year Change | | June 29, 2008 | July 1, 2007 | Year-over-Year Change |
| ortization of purchased intangible assets | $ 1,841 | $ 5,564 | (67%) | | $ 1,066 | $ 1,123 | (5%) |
| k-based compensation | 2,239 | 2,189 | 2% | | 2,890 | 1,009 | 186% |
| ory pre-operating costs | 373 | 345 | (8%) | | 466 | 1,233 | (62%) |
| other cost of revenue | 204,684 | 83,420 | 145% | | 76,162 | 49,091 | 55% |
| Total cost of revenue | $ 209,137 | $ 91,518 | 129% | | $ 80,584 | $ 52,456 | 54% |
| il cost of revenue as a percentage of revenue | 77% | 88% | | | 72% | 75% | |
| il gross margin percentage | 23% | 12% | | | 28% | 25% | |

| (Dollars in thousands) | Systems Segment | | | | Components Segment | | |
|---|---|---|---|---|---|---|---|
| | Six Months Ended | | | | Six Months Ended | | |
| | June 29, 2008 | July 1, 2007 | Year-over-Year Change | | June 29, 2008 | July 1, 2007 | Year-over-Year Change |
| ortization of purchased intangible assets | $ 4,009 | $ 10,510 | (62%) | | $ 2,110 | $ 2,246 | (6%) |
| k-based compensation | 4,750 | 4,186 | 13% | | 4,093 | 1,262 | 224% |
| airment of long-lived assets | 1,343 | — | n.a. | | 4,146 | — | n.a. |
| ory pre-operating costs | 640 | 530 | 21% | | 852 | 2,264 | (62%) |
| other cost of revenue | 341,608 | 138,758 | 146% | | 146,551 | 94,140 | 56% |
| Total cost of revenue | $ 352,350 | $ 153,984 | 129% | | $ 157,752 | $ 99,912 | 58% |
| il cost of revenue as a percentage of revenue | 78% | 84% | | | 76% | 75% | |
| il gross margin percentage | 22% | 16% | | | 24% | 25% | |

During the three and six months ended June 29, 2008, our total cost of revenue was approximately \$289.7 million and \$510.1 million, respectively, which represented increases of 101% compared to total cost of revenue reported in the comparable period of 2007. The increase in total cost of revenue resulted from increased costs in all cost of revenue spending categories and corresponds with an increase of 120% and 108% in total revenue during the three and six months ended June 29, 2008, respectively, from total revenue reported in the comparable period of 2007.

As a percentage of total revenue, our total cost of revenue decreased to 76% and 78% in the three and six months ended June 29, 2008, respectively, compared to 83% and 80% for the three and six months ended July 1, 2007, respectively. This decrease in total cost of revenue as a percentage of total revenue is reflective of decreased costs of polysilicon beginning in the second quarter of fiscal 2008 and improved manufacturing economies of scale associated with markedly higher production volume. This decrease in total cost of revenue as a percentage of total revenue was partially offset by (i) one-time asset impairment charges of \$5.5 million in the six months ended June 29, 2008 relating to the wind-down of our imaging detector product line and for the write-down of certain solar product manufacturing equipment which became obsolete due to new processes; (ii) a more favorable mix of business in our systems segment that benefited gross margin by approximately four percentage points during the six months ended July 1, 2007; and (iii) the \$2.7 million settlement received from one of our suppliers in the components segment during the six months ended July 1, 2007 in connection with defective materials sold to us during 2006 that was reflected as a reduction to total cost of revenue.

47.    **Controls.** In addition to the foregoing, the Company's 2Q:08 Form 10-Q also contained

statements regarding the sufficiency and adequacy of the Company's Controls and Procedures that

stated, in part, the following:

## Evaluation of Disclosure Controls and Procedures

We maintain "disclosure controls and procedures," as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), that are designed to ensure that information required to be disclosed by us in reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in Securities and Exchange Commission rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure. In designing and evaluating our disclosure controls and procedures, management recognized that disclosure controls and procedures, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the disclosure controls and procedures are met. Additionally, in designing disclosure controls and procedures, our management necessarily was required to apply its judgment in evaluating the cost-benefit relationship of possible disclosure controls and procedures....

Based on their evaluation as of the end of the period covered by this

CLASS ACTION COMPLAINT                                     - 23 -

339416.V1

Quarterly Report on Form 10-Q and subject to the foregoing, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective.

48.     **Certifications.** In addition to the longer certifications similar to the one included in the Company's 1Q:08 Form 10-Q, the Company's 2Q:08 Form 10-Q also contained the short-form certifications by Defendants Werner and Hernandez, that again attested to the purported accuracy and completeness of the Company's financial and operational reports as well as statements concerning the Company's controls and procedures, as follows:

## CERTIFICATION OF CHIEF EXECUTIVE OFFICER AND CHIEF FINANCIAL OFFICER PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the quarterly report of SunPower Corporation (the "Company") on Form 10-Q for the period ended June 29, 2008 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), each of Thomas H. Werner, Chief Executive Officer, and Emmanuel T. Hernandez, Chief Financial Officer, of the Company, certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of his knowledge and belief:

(1)     The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)     The information contained in the Report fairly presents, in all material respects, the financial condition and result of operations of the Company.

Dated: August 8, 2008

/ S / T HOMAS H. W ERNER

Thomas H. Werner
Chief Executive Officer
(Principal Executive Officer)

/ S / E MMANUEL T. H ERNANDEZ

Emmanuel T. Hernandez
Chief Financial Officer
(Principal Financial and Accounting Officer)

49.     The statements contained in SunPower's July 17, 2008 release and those statements contained in the Company's 2Q:08 Form 10-Q, referenced above, were each materially false and misleading when made, and were known by Defendants to be false or were deliberately disregarded as such thereby, for the reasons stated herein, in ¶ 39 *supra*.

CLASS ACTION COMPLAINT                                        - 24 -

339416 V1

50. **Investment Presentation**. With shares of the Company continuing to trade at prices artificially inflated by the publication of Defendants' materially false and misleading statements, in the days and weeks following the filing of the Company's 2Q:08 Form 10-Q Defendant Werner also spoke at the Raymond James 4th Annual European Investors North American Equities Conference at the Four Seasons Hotel in London, England, on September 4, and the Company announced that Werner would also deliver the keynote address at the Deutsche Bank 2008 Technology Conference to be held at The Palace Hotel in San Francisco on September 10.

51. Taking advantage of the continued inflation in the price of Company shares caused as a result of Defendants' publication of materially false and misleading information about SunPower, on September 17, 2008, Defendants announced that SunPower had filed a Registration Statement with the SEC that would allow Cypress Semiconductor Corporation to sell the outstanding shares of Class B stock held by Cyprus.

52. **3Q:08 Results Announced**. On October 16, 2008, SunPower published a release announcing results for the third quarter ended September 28, 2008 and reiterated guidance for the remainder of 2008. This release also stated, in part, the following:

SunPower Reports Third-Quarter 2008 Results

-   Generated third quarter 2008 revenue of \$377.5 million, up 61% year-on-year

-   Achieved \$0.26 GAAP net income per share, \$0.60 non-GAAP

-   Announced agreements with Pacific Gas and Electric Co., and Florida Power & Light Co., for power plants totaling 250 megawatts and 35 megawatts respectively

-   Grew residential and small-commercial rooftop dealer network by more than 25% sequentially

-   500 systems representing 400 megawatts installed or under contract to date worldwide

-   Dedicated 8.4-megawatt power plant in Isla Major, Spain - total Spanish systems exceed 165 megawatts completed or under contract

-   Completed Cypress Semiconductor distribution of SunPower class B shares

-   Achieved free cash flow positive. Increased cash, cash equivalents and investments by \$95 million in Q3, business plan fully funded.

CLASS ACTION COMPLAINT                                       - 25 -

339416 V1

SAN JOSE, Calif., Oct 16, 2008 /PRNewswire-FirstCall via COMTEX News Network/ -- SunPower Corporation (Nasdaq: SPWRA, SPWRB) today announced financial results for the third quarter 2008, which ended September 28, 2008. This press release contains both GAAP and non-GAAP financial information. Non-GAAP figures are reconciled to the closest GAAP equivalent figures on the final page of this press release. Please note that the company has posted additional, supplemental information related to its third-quarter 2008 performance on the Events and Presentations section of the Investor Relations page located on the SunPower website at www.sunpowercorp.com.

53.     In addition to the foregoing, the Company's October 16, 2008 release also provided

purported guidance, provided in part by Defendant Werner, as follows:

"Based on the strong global demand trends that we are seeing, as well as our internal execution on our goal of reducing system installed costs by 50% from 2006 to 2012, we expect the following fiscal year 2008 non-GAAP results: total revenue of $1.44 billion to $1.46 billion and diluted net income per share of $2.34 to $2.41. Consistent with our practice of offering guidance for the current quarter, we expect fourth quarter 2008 non-GAAP total revenue of $405 million to $435 million, company non-GAAP gross margin of 29% to 30% and non-GAAP diluted net income per share of $0.73 to $0.80. We also expect our 2009 total revenue to be in of the range of $2.05 billion to $2.15 billion, production capacity of 450+ megawatts and non-GAAP diluted net income per share of at least $3.50 (1).

"On a business segment basis, we expect the following non-GAAP results for the fourth quarter 2008: Components segment revenue of $235 million to $255 million, and gross margin of 37% to 37.5%; Systems segment revenue of $170 million to $180 million and gross margin of 18% to 19% (2). We expect the Components segment to benefit from the continued manufacturing ramp of our next-generation technology and lower silicon cost and the Systems segment to reflect a combination of changes in project and regional mix," concluded Werner.

* * *

(1) For the full year 2008, we expect the following total company GAAP results: Revenue of $1.44 billion to $1.46 billion and diluted net income per share of $1.08 to $1.15. For the fourth quarter of 2008, we expect the following total company GAAP results: Revenue of $405 million to $435 million; gross margin of approximately 26.8 percent to 27.8 percent and diluted net income per share of $0.34 to $0.41. For the full year 2009, we expect the following total company GAAP results: Revenue of $2.05 billion to $2.15 billion and diluted net income per share of at least $2.10.

(2) For the fourth quarter of 2008, we expect the Components business segment to generate GAAP revenue of $235 million to $255 million and gross margin of approximately 35.5 percent to 36 percent and the Systems business segment to generate GAAP revenue of $170 million to $180 million and gross margin of approximately 15 percent to 16 percent.

54.     In addition to the foregoing, this release also quoted Defendant Werner, in part, as follows:

"In the third-quarter, SunPower continued to demonstrate the advantage of a multi-segment, multi-geographic, vertical integration strategy as we executed very well in an evolving policy environment," said Tom Werner, SunPower's CEO. "By

CLASS ACTION COMPLAINT                    - 26 -

339416 V1

leveraging our flexible model, we expanded our global footprint, opened up new markets and laid the foundation for long-term success. Overall, global industry fundamentals remain strong and demand is increasing across multiple geographies. *Our cost reduction roadmap is paying dividends as we are now selling at a levelized cost of energy which is cost- effective for our customers* as evidenced by our recent utility-scale announcements with Pacific Gas and Electric Co. (PG&E), and Florida Power & Light Co. With the recent extension of the U.S. Investment Tax Credit, we now have a national solar market in the U.S. with long-term visibility and significant additional demand potential in all three market segments - residential, commercial and utility. We also saw uncertainty removed from the Spanish market in the third quarter. These *developments make us even more confident in our planned performance as we look into next year*.

"In the Components business segment, during the third quarter, we grew our worldwide dealer network by more than 25 percent. This business is scaling very rapidly building on our multi-year investment in the infrastructure to serve a wide variety of markets using a core backbone of technology and services. With this channel investment, we offer our customers not only the best technology solutions but also the best customer experience which is a key platform for the SunPower brand. In addition, our Components business segment has further expanded its global footprint by delivering sales into the Middle East.

\* \* \*

"*Our cost reduction programs remain on track, enabling us to open up new markets such as the U.S. utility market where the combination of our tracking and industry leading cell technologies offer utilities a very competitive levelized cost of energy*. In a watershed announcement for the industry, we were selected by PG&E to supply the California utility with 250-megawatts of solar power by 2012. This project will be the first, true utility-scale photovoltaic power plant in the world when completed, delivering an average of 550,000 megawatt-hours of clean electricity annually. The project is contracted to begin power delivery in 2010 and be fully operational in 2012. This win demonstrates that photovoltaic technology is competitive with other utility-scale generation options today. SunPower's success in the utility- scale market is a direct result of our high-efficiency solar panels paired with high-capacity SunPower tracker technology, which generates up to 30 percent more energy than fixed tilt systems.

*"Due to strong industry fundamentals, continued execution of our vertical integration strategy, expected gross margin expansion, and our progress on our cost reduction programs*, we will materially meet our target operating model in the fourth quarter. We *are strategically well positioned for 2009 and remain on track to realize our mission of reducing installed systems cost by 50% from 2006 to 2012.*

55. **3Q:08 Form 10-Q.** Later, on or about November 7, 2008, Defendants filed with the SEC the Company's 3Q:08 Form 10-Q for the quarter ended September 28, 2008, signed by Defendant Hernandez and certified by Defendants Werner and Hernandez. In addition to making substantially similar statements concerning the Company operations, revenue costs, and expense ratios, the Company's 3Q:08 Form 10-Q also stated, in part, the following:

## Basis of Presentation

The accompanying condensed consolidated financial statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC") regarding interim financial reporting. The year-end Condensed Consolidated Balance Sheets data was derived from audited financial statements. Accordingly, these financial statements do not include all of the information and footnotes required by generally accepted accounting principles for complete financial statements and should be read in conjunction with the Financial Statements and notes thereto included in the Company's Annual Report on Form 10-K for the year ended December 30, 2007.

\* \* \*

In the opinion of management, the accompanying condensed consolidated financial statements contain all adjustments, consisting only of normal recurring adjustments, which the Company believes are necessary for a fair statement of the Company's financial position as of September 28, 2008 and its results of operations for the three and nine months ended September 28, 2008 and September 30, 2007 and its cash flows for the nine months ended September 28, 2008 and September 30, 2007....

56. **Cost of Revenues.** The 3Q:08 Form 10-Q also reported the Company's purported Cost of Revenue (as a percentage of revenue and the year-over-year change) for its two segments, as follows:

|  | Three Months Ended | | | Nine Months Ended | | |
|---|---|---|---|---|---|---|
| (Dollars in thousands) | September 28, 2008 | September 30, 2007 | Year-over-Year Change | September 28, 2008 | September30, 2007 | Year-over-Year Change |
| ost of systems revenue | $ 158,730 | $ 135,111 | 17% | $ 511,080 | $ 289,095 | 77% |
| ost of components revenue | 113,149 | 60,818 | 86% | 270,901 | 160,730 | 69% |
| otal cost of revenue | $ 271,879 | $ 195,929 | 39% | $ 781,981 | $ 449,825 | 74% |
| otal cost of revenue as a percentage of revenue | 72% | 84% | | 76% | 82% | |
| otal gross margin percentage | 28% | 16% | | 24% | 18% | |

|  | Systems Segment | | | Components Segment | | |
|---|---|---|---|---|---|---|
|  | Three Months Ended | | | Three Months Ended | | |
| (Dollars in thousands) | September 28, 2008 | September 30, 2007 | Year-over-Year Change | September 28, 2008 | September 30, 2007 | Year-over-Year Change |
| mortization of purchased intangible assets | $ 1,841 | $ 4,787 | (62%) | $ 1,106 | $ 1,123 | (2%) |
| ock-based compensation | 2,911 | 2,049 | 42% | 1,964 | 1,539 | 28% |
| ipairment of long-lived assets | (1,343) | — | n.a. | (1,943) | — | n.a. |
| ictory pre-operating costs | 249 | 162 | 54% | 531 | 921 | (42%) |

CLASS ACTION COMPLAINT

- 28 -

339416 V1

| | | | | | | |
|---|---|---|---|---|---|---|
| ll other cost of revenue | 155,072 | 128,113 | 21% | 111,491 | 57,235 | 95% |
| otal cost of revenue | $ 158,730 | $ 135,111 | 17% | $ 113,149 | $ 60,818 | 86% |
| otal cost of revenue as a percentage of revenue | 82% | 86% | | 61% | 79% | |
| otal gross margin percentage | 18% | 14% | | 39% | 21% | |

| | Systems Segment Nine Months Ended | | | Components Segment Nine Months Ended | | |
|---|---|---|---|---|---|---|
| (Dollars in thousands) | September 28, 2008 | September 30, 2007 | Year-over-Year Change | September 28, 2008 | September 30, 2007 | Year-over-Year Change |
| mortization of purchased intangible assets | $ 5,850 | $ 15,297 | (62%) | $ 3,216 | $ 3,370 | (5%) |
| ock-based compensation | 7,661 | 6,235 | 23% | 6,057 | 2,801 | 116% |
| ipairment of long-lived assets | — | — | n.a. | 2,203 | — | n.a. |
| ictory pre-operating costs | 889 | 692 | 28% | 1,383 | 3,185 | (57%) |
| ll other cost of revenue | 496,680 | 266,871 | 86% | 258,042 | 151,374 | 70% |
| otal cost of revenue | $ 511,080 | $ 289,095 | 77% | $ 270,901 | $ 160,730 | 69% |
| otal cost of revenue as a percentage of revenue | 80% | 85% | | 69% | 76% | |
| otal gross margin percentage | 20% | 15% | | 31% | 24% | |

Systems Segment Cost of Revenue: Our cost of systems revenue consists primarily of solar panels, mounting systems, inverters and subcontractor costs. The cost of solar panels is the single largest cost element in our cost of systems revenue. Our systems segment sourced approximately 69% and 58% of its solar panel installations with SunPower products in the three and nine months ended September 28, 2008, respectively, compared to 25% and 27% for the three and nine months ended September 30, 2007, respectively. We expect that our systems segment will continue to source at or about 69% of its projects with SunPower solar panels during the fourth quarter of fiscal 2008. Our systems segment generally experiences higher gross margin on construction projects that utilize SunPower solar panels compared to construction projects that utilize solar panels purchased from third parties. For the three and nine months ended September 28, 2008, gross margin for the systems segment was $34.6 million and $131.7 million, respectively, or 18% and 20 % of systems segment revenue, respectively. Gross margin for the systems segment was $22.6 million and $51.2 million for the three and nine months ended September 30, 2007, respectively, or 14% and 15% of systems segment revenue, respectively. Gross margin in our systems segment increased four percentage points in the three months ended September 28, 2008 as compared to the three months ended September 30, 2007 and five percentage points in the nine months ended September 28, 2008 as compared to the nine months ended September 30, 2007 due to higher percentage of SunPower solar panels used in its projects as well as cost savings we realized from more efficient field implementation of our systems trackers.

57.    **Controls.** In addition to the foregoing, the Company's 3Q:08 Form 10-Q also contained statements regarding the sufficiency and adequacy of the Company's Controls and Procedures that stated, in part, the following:

CLASS ACTION COMPLAINT                                   - 29 -

339416 V1

**Evaluation of Disclosure Controls and Procedures**

We maintain "disclosure controls and procedures." as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), that are designed to ensure that information required to be disclosed by us in reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in Securities and Exchange Commission rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure. In designing and evaluating our disclosure controls and procedures, management recognized that disclosure controls and procedures, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the disclosure controls and procedures are met. Additionally, in designing disclosure controls and procedures, our management necessarily was required to apply its judgment in evaluating the cost-benefit relationship of possible disclosure controls and procedures. The design of any disclosure controls and procedures also is based in part upon certain assumptions about the likelihood of future events, and there can be no assurance that any design will succeed in achieving its stated goals under all potential future conditions.

Based on their evaluation as of the end of the period covered by this Quarterly Report on Form 10-Q and subject to the foregoing, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective.

58.     **Certifications.** In addition to the foregoing, the Company's 3Q:08 Form 10-Q also contained both long and short-form certifications by Defendants Werner and Hernandez that attested to the purported accuracy and completeness of the Company's financial and operational reports as well as statements concerning the Company's controls and procedures, an example of which reads as follows:

### CERTIFICATION OF CHIEF EXECUTIVE OFFICER AND CHIEF FINANCIAL OFFICER PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the quarterly report of SunPower Corporation (the "Company") on Form 10-Q for the period ended September 28, 2008 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), each of Thomas H. Werner, Chief Executive Officer, and Emmanuel T. Hernandez, Chief Financial Officer, of the Company, certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of his knowledge and belief:

(1)     The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)     The information contained in the Report fairly presents, in all material respects, the financial condition and result of operations of the Company.

CLASS ACTION COMPLAINT                                   - 30 -

339416 V1

Dated: November 7, 2008

/ S / T HOMAS H. W ERNER

Thomas H. Werner
Chief Executive Officer
(Principal Executive Officer)

/ S / E MMANUEL T. H ERNANDEZ

Emmanuel T. Hernandez
Chief Financial Officer
(Principal Financial and Accounting Officer)

59.     The statements contained in SunPower's October 16, 2008 release and those statements contained in the Company's 3Q:08 Form 10-Q, referenced above, were each materially false and misleading when made, and were known by Defendants to be false or were deliberately disregarded as such thereby, for the reasons stated herein, in ¶ 39 *supra*.

60.     **Investment Presentations.** With shares of the Company trading at prices artificially inflated by the publication of Defendants' materially false and misleading statements, in the days and weeks following the filing of the Company's 3Q:08 Form 10-Q Defendants also organized or participated in live investor conferences that were also designed to and did artificially inflate and maintain the price of SunPower's shares. These included presentations by Defendants Hernandez and others, at the following locations and times, including:

*       On December 02, 2008, Defendants announced that the Company's new CFO, Dennis Arriola, would deliver the keynote address at the Credit Suisse Annual Technology Conference at the Phoenician Resort in Scottsdale, Arizona, on December 4.

*       On December 2, 2008, Defendants also announced that outgoing CFO, Manny Hernandez, would deliver a presentation at the Barclays Capital Global Technology Conference being held at the Fairmont Hotel in San Francisco on December 10.

61.     **4Q & FY:08 Results Announced.** On January 29, 2009, SunPower published a release announcing purported "Record"-setting results for the fourth quarter and fiscal year ended December 28, 2008 and raising guidance for the remainder of 2008 and for 2009. This release also stated, in part, the following:

SunPower Reports Record Fourth-Quarter and Fiscal Year 2008 Results

CLASS ACTION COMPLAINT                                         - 31 -

1        -    Generated fourth quarter 2008 revenue of $401 million, up 79% year-on-year

2

-    Recorded fiscal year 2008 revenue of $1.43 billion, up 85% year-on-year

3

-    Achieved fourth quarter 2008 GAAP net income per share of $0.35, $0.70
4          non-GAAP

5        -    Announced two multi-year agreements with European integrators totaling
          230 megawatts
6

-    Added more than 350 residential and small-commercial dealers worldwide
7          in 2008

8        -    Appointed Dennis Arriola as the company's new chief financial officer

9        -    Maintained strong liquidity with over $436 million in cash and investments

10       -    Expects fiscal year 2009 revenue of $1.6 billion to $2.0 billion

11     SAN JOSE, Calif., Jan 29, 2009 /PRNewswire-FirstCall via COMTEX News
        Network/ -- SunPower Corporation (Nasdaq: SPWRA, SPWRB) today announced
12     record financial results for its 2008 fourth quarter and fiscal year, which ended Dec.
        28, 2008. Revenue for the 2008 fourth quarter was $401 million and compares to
13     $378 million in the third-quarter of 2008 and $224 million in the fourth-quarter of
        last year. The Components and Systems segments accounted for 56% and 44% of
14     fourth-quarter revenue, respectively.

15   62.    In addition to the foregoing, the Company's January 29, 2009 release also provided

16   purported guidance, in part, as follows:

17     2009 Guidance

18     The company expects the following fiscal year 2009 non-GAAP results: total
        revenue of $1.6 billion to $2.0 billion, net income per diluted share of $2.20 to
19     $2.80(1) and production capacity of more than 450 megawatts.

20     "The long-term solar industry fundamentals remain very positive and the company's
        2009 sales pipeline is made up of identifiable customers and projects," said Dennis
21     Arriola, SunPower's chief financial officer. "Given the continuing weak credit
        environment, our ability to meet the high-end of the revenue and earnings-per-share
22     ranges will be dependent on improved access to the project financing markets. We
        expect our first-half of 2009 performance to be materially affected by seasonal
23     factors and the continuing impact of the credit crisis."

24     This press release contains both GAAP and non-GAAP financial information. Non-
        GAAP figures are reconciled to the closest GAAP equivalent figures on the final
25     page of this press release. Please note that the company has posted supplemental
        information related to its fourth-quarter 2008 performance on the Events and
26     Presentations section of the Investor Relations page located on the SunPower
        website at http://www.sunpowercorp.com.
27
                                        * * *
28

CLASS ACTION COMPLAINT           - 32 -

330416 V1

(1) For the full year 2009, we expect the following total company GAAP results: Revenue of $1.6 billion to $2.0 billion and net income per diluted share of $1.40 to $1.90.

63. In addition to the foregoing, this release also quoted Defendant Werner, in part, as follows:

"Our fourth-quarter performance reflects the continued strength of our vertically integrated business model, broad channel reach and geographic diversification," said Tom Werner, SunPower's CEO. "Our flexible model enables us to rapidly deploy our solutions across multiple geographies, especially in our worldwide dealer network where we continue to see strong demand both in the United States and Europe. Our Systems business also executed well in the fourth quarter as we commissioned dozens of large scale solar projects globally."

* * *

"Long-term solar market fundamentals remain in place and we are encouraged by the commitment to renewable energy by President Obama and Congressional leadership," continued Werner. "Given these factors, we are well positioned to take advantage of growing global demand for solar this year and in the future, despite uncertainty in today's economic and credit environment."

64. **Investment Presentations**. With shares of the Company trading at prices artificially

inflated by the publication of Defendants' materially false and misleading statements, in the days

and weeks following the filing of the Company's FY:08 Form 10-K Defendants also organized or

participated in live investor conferences that were also designed to and did artificially inflate and

maintain the price of SunPower's shares. These included presentations by Defendants Werner and

others, at the following locations and times, including:

* On February 5, 2009, Defendants announced that Bob Okunski, Senior Director of Investors Relations at SunPower, would speak at the Thomas Wiesel Partners Technology & Telecom Conference 2009 at the Fairmont Hotel in San Francisco, on February 9th.

* On February 5, 2009, Defendants also announced that SunPower CEO, Tom Werner, would deliver the keynote address at Piper Jaffray's Fourth Annual Clean Technology & Renewables Conference The Westin New York at Times Square in New York City, on February 19th.

* On February 26, 2009, Defendants announced that Tom Werner, SunPower's CEO, will speak at the Morgan Stanley Technology Conference to be held at the Palace Hotel in San Francisco, on March 2nd.

* On February 26, 2009, Defendants also announced that SunPower CFO, Dennis Arriola, will present at the Raymond James 30th Annual Institutional Investors Conference at the JW Marriott, Grande Lakes hotel in Orlando, Florida, on March 10th and that he would also address the Merrill Lynch Cleantech Leaders Conference at the World Financial Center in New York City, on March 11th

* On February 26, 2009, Defendants announced too that Julie Blunden, Vice President

CLASS ACTION COMPLAINT - 33 -

339416 V1

of Public Policy and Corporate Communications, would speak at the 7th Global Clean Technology Conference hosted by Jefferies at the Mandarin Oriental Hotel in New York City, on March 17th.

65.    **4Q FY:08 Form 10-K.** Also On February 26, 2009, Defendants filed with the SEC the Company's 2008 Form 10-K, for the fiscal year end December 28, 2008, signed by Defendants and certified by Defendants Werner and Arriola. In addition to making substantially similar statements concerning the Company operations, revenue costs, and expense ratios, the Company's 2008 Form 10-K reported the Company's purported Cost of Revenue (as a percentage of revenue and the year-over-year change) for its two segments, as follows:

Cost of Revenue

Systems Segment Cost of Revenue:  Our cost of systems revenue consists primarily of solar panels, mounting systems, inverters and subcontractor costs. The cost of solar panels is the single largest cost element in our cost of systems revenue. Our Systems Segment sourced approximately 60% of its solar panel installations with SunPower solar panels in fiscal 2008 compared to 27% in fiscal 2007. Over time, we expect that our Systems Segment will increase the percentage of its construction projects sourced with SunPower solar panels to as much as 80% in fiscal 2009. Our Systems Segment generally experiences higher gross margin on construction projects that utilize SunPower solar panels compared to construction projects that utilize solar panels purchased from third-parties.

* * *

Components Segment Cost of Revenue:  Our cost of components revenue consists primarily of silicon ingots and wafers used in the production of solar cells, along with other materials such as chemicals and gases that are needed to transform silicon wafers into solar cells. For our solar panels, our cost of revenue includes the cost of solar cells and raw materials such as glass, frame, backing and other materials, as well as the assembly costs we pay to our third-party subcontractor in China. Our Components Segment gross profit each quarter is affected by a number of factors, including average selling prices for our products, our product mix, our actual manufacturing costs, the utilization rate of our solar cell manufacturing facilities and changes in amortization of intangible assets.

* * *

Other Cost of Revenue Factors:  Other factors contributing to cost of revenue include depreciation, provisions for estimated warranty, salaries, personnel-related costs, freight, royalties, facilities expenses and manufacturing supplies associated with contracting revenue and solar cell fabrication as well as factory pre-operating costs associated with our second solar cell manufacturing facility, or FAB2, and our solar panel assembly facility. Such pre-operating costs included compensation and training costs for factory workers as well as utilities and consumable materials associated with preproduction activities. Additionally, within our own solar panel assembly facility in the Philippines we incur personnel-related costs, depreciation, utilities and other occupancy costs. To date, demand for our solar power products

1  has been robust and our production output has increased allowing us to spread a
2  significant amount of our fixed costs over relatively high production volume,
   thereby reducing our per unit fixed cost....

3  66.  **Controls.** In addition to the foregoing, the Company's 2008 Form 10-K also contained

4  statements regarding the sufficiency and adequacy of the Company's Controls and Procedures that

5  stated, in part, the following:

6  ITEM 9A: CONTROLS AND PROCEDURES

7  Disclosure Controls and Procedures

8  We maintain "disclosure controls and procedures," as such term is defined in Rules
   13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended
9  ("Exchange Act"), that are designed to ensure that information required to be
   disclosed by us in reports that we file or submit under the Exchange Act is recorded,
10  processed, summarized, and reported within the time periods specified in Securities
   and Exchange Commission rules and forms, and that such information is
11  accumulated and communicated to our management, including our Chief Executive
   Officer and Chief Financial Officer, as appropriate, to allow timely decisions
12  regarding required disclosure. In designing and evaluating our disclosure controls
   and procedures, management recognized that disclosure controls and procedures, no
13  matter how well conceived and operated, can provide only reasonable, not absolute,
   assurance that the objectives of the disclosure controls and procedures are met.
14  Additionally, in designing disclosure controls and procedures, our management is
   required to apply its judgment in evaluating the cost-benefit relationship of possible
15  disclosure controls and procedures. The design of any disclosure controls and
   procedures also is based in part upon certain assumptions about the likelihood of
16  future events, and there can be no assurance that any design will succeed in
   achieving its stated goals under all potential future conditions.

17
18  Based on their evaluation as of the end of the period covered by this Annual Report
   on Form 10-K and subject to the foregoing, our Chief Executive Officer and Chief
19  Financial Officer have concluded that our disclosure controls and procedures were
   effective.

20  **Management's Report on Internal Control over Financial Reporting**

21  Our management is responsible for establishing and maintaining adequate internal
   control over financial reporting as defined in Rule 13a-15(f) of the Exchange Act.
22  Because of its inherent limitations, internal control over financial reporting may not
   prevent or detect misstatements and can only provide reasonable assurance with
23  respect to financial statement preparation. Also, projections of any evaluation of
   effectiveness to future periods are subject to the risk that controls may become
24  inadequate because of changes in conditions, or that the degree of compliance with
   the policies or procedures may deteriorate.

25
26  We assessed the effectiveness of our internal control over financial reporting as of
   December 28, 2008. In making this assessment, we used the criteria set forth by the
   Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in
27  Internal Control—Integrated Framework . Based on our assessment using those
   criteria, our management (including our Chief Executive Officer and Chief
28  Financial Officer) concluded that our internal control over financial reporting was

CLASS ACTION COMPLAINT                                    - 35 -

339416 V1

1    effective as of December 28, 2008.

2    The effectiveness of our internal control over financial reporting as of December 28,
     2008 has been audited by PricewaterhouseCoopers LLP, an independent registered
3    public accounting firm, as stated in their report which appears on page 55 of this
     Annual Report on Form 10-K.

4
     **Changes in Internal Control over Financial Reporting**
5
     We maintain a system of internal control over financial reporting that is designed to
6    provide reasonable assurance that our books and records accurately reflect our
     transactions and that our established policies and procedures are followed. There
7    were no changes in our internal control over financial reporting that occurred during
     the quarter ended December 28, 2008 that has materially affected, or is reasonably
8    likely to materially affect, our internal control over financial reporting.

9    In the third quarter of fiscal 2008, we implemented a new enterprise resource
     planning ("ERP") system in our subsidiaries around the world, which *resulted in a*
10   *material update to our system of internal control over financial reporting.* Issues
     encountered subsequent to implementation caused us to further revise our internal
11   control process and procedures in order to correct and supplement our processing
     capabilities within the new system in that quarter. Throughout the ERP system
12   stabilization period *we will continue to improve and enhance our system of*
     *internal control over financial reporting.*

13
14   67.     **Report of Independent Auditors : PriceWaterhouseCoopers.** The 2008 Form 10-K also

15   contained a purported Report by the Company's Independent Registered Public Accounting Firm

16   which also confirmed the supposed accuracy and completeness of the Company's financial

17   reporting, in part, as follows:

18   **Report of Independent Registered Public Accounting Firm**

19   To the Board of Directors and Stockholders of
     SunPower Corporation:

20   *In our opinion, the consolidated financial statements listed in the accompanying*
     *index appearing under Item 8 present fairly, in all material respects, the financial*
21   *position of SunPower Corporation and its subsidiaries (the "Company") at*
     *December 28, 2008 and December 30, 2007,* and the results of their operations and
22   their cash flows for each of the three years in the period ended December 28, 2008
     in conformity with accounting principles generally accepted in the United States of
23   America. In addition, in our opinion, the financial statement schedule listed in the
     accompanying index appearing under Item 8 presents fairly, in all material respects,
24   the information set forth therein when read in conjunction with the related
     consolidated financial statements. *Also in our opinion, the Company maintained, in*
25   *all material respects, effective internal control over financial reporting as of*
     *December 28, 2008,* based on criteria established in Internal Control - Integrated
26   Framework issued by the Committee of Sponsoring Organizations of the Treadway
     Commission (COSO)..... *We conducted our audits in accordance with the*
27   *standards of the Public Company Accounting Oversight Board (United States).*
     Those standards require that we plan and perform the audits to obtain reasonable
28   assurance about whether the financial statements are free of material misstatement

CLASS ACTION COMPLAINT                          - 36 -

339416 V1

1    and whether effective internal control over financial reporting was maintained in all
     material respects. Our audits of the financial statements included examining, on a
2    test basis, evidence supporting the amounts and disclosures in the financial
     statements, assessing the accounting principles used and significant estimates made
3    by management, and evaluating the overall financial statement presentation. Our
     audit of internal control over financial reporting included obtaining an
4    understanding of internal control over financial reporting, assessing the risk that a
     material weakness exists, and testing and evaluating the design and operating
5    effectiveness of internal control based on the assessed risk. Our audits also included
     performing such other procedures as we considered necessary in the circumstances.
6    We believe that our audits provide a reasonable basis for our opinions.

7         As discussed in Note 12 to the consolidated financial statements, the Company
     changed the manner in which it accounts for uncertain tax positions in 2007.
8
                                          * * *
9
     /s/ PricewaterhouseCoopers LLP
10   San Jose, California
     February 25, 2009
11
     68.    **Certifications.** In addition to the foregoing, the Company's 2008 Form 10-K also contained
12
     certifications by Defendants Werner and Arriola that attested to the purported accuracy and
13
     completeness of the Company's financial and operational reports as well as statements concerning
14
     the Company's controls and procedures, as follows:
15
                    **CERTIFICATION OF CHIEF EXECUTIVE OFFICER AND
16                      CHIEF FINANCIAL OFFICER PURSUANT TO
                     18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO
17                    SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

18        In connection with the annual report of SunPower Corporation (the "Company")
     on Form 10-K for the period ended December 28, 2008 as filed with the Securities
19   and Exchange Commission on the date hereof (the "Report"), each of Thomas H.
     Werner, Chief Executive Officer, and Dennis V. Arriola, Chief Financial Officer, of
20   the Company, certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to
     Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of his knowledge
21   and belief:

22        (1)    The Report fully complies with the requirements of Section 13(a) or 15(d)
     of the Securities Exchange Act of 1934; and
23
          (2)    The information contained in the Report fairly presents, in all material
24   respects, the financial condition and result of operations of the Company.

25   Dated: February 26, 2009

26
                                          / S / T HOMAS H. W ERNER
27                                        Thomas H. Werner
                                          Chief Executive Officer
28                                        (Principal Executive Officer)

CLASS ACTION COMPLAINT                    - 37 -

339416 V1

<table>
<tr><td></td><td align="right">/S/ DENNIS V. ARRIOLA</td></tr>
</table>

1

2                                                    /S/ DENNIS V. ARRIOLA
                                                        Dennis V. Arriola
3                                     Senior Vice President and Chief Financial Officer
                                         (Principal Financial and Accounting Officer)

4

5     69.    The statements contained in SunPower's January 29, 2009 release and those statements

6     contained in the Company's 2008 Form 10-K, referenced above, were each materially false and

7     misleading when made, and were known by Defendants to be false or were deliberately

8     disregarded as such thereby, for the reasons stated herein in ¶ 39, *supra*.

9     70.    **1Q:09 Results Announced**. On April 23, 2009, SunPower published a release announcing

10    results for the first quarter ended March 29, 2009 and reiterating guidance for the remainder of

11    2009. This release also stated, in part, the following:

        SunPower Reports First-Quarter 2009 Results

12
            --    Signed 3-year, 300 to 600 MW supply agreement with FPL Group in April
13               2009 -- Awarded 17 MW power plant agreement with Xcel Energy in April
                 2009
14
            --    Announced 8 MW power plant development agreement with Exelon in April
15               2009 -- Received regulatory approval of 210 MW power purchase agreement
                 with Pacific Gas and Electric
16
            --    Booked more than $60 million in North American commercial systems
17               projects

18          --    Began construction of SunPower's first Italian power plant with Api Nova

19          SAN JOSE, Calif., April 23, 2009 /PRNewswire-FirstCall via COMTEX News
            Network/ -- SunPower Corporation (Nasdaq: SPWRA, SPWRB) today announced
20          financial results for its 2009 first quarter which ended March 29, 2009. Revenue for
            the 2009 first quarter was $214 million and compares to revenues of $401 million in
21          the fourth quarter of 2008 and $274 million in the first quarter of last year. The
            Components and Systems segments each accounted for 50% of first-quarter 2009
22          revenue.

23    71.    In addition to the foregoing, the Company's April 23, 2009 release also provided purported

24    guidance, in part, as follows:

25          **2009 Guidance**

26          The company expects the following fiscal year 2009 non-GAAP results: total
            revenue of $1.3 billion to $1.7 billion, net income per diluted share of $1.25 to
27          $1.75 and production of up to 400 megawatts. The company also revised its 2009
            capital expenditure outlook from $350 million - $400 million to $250 million - $300
28          million.

CLASS ACTION COMPLAINT                              - 38 -

339416 V1

For the full year 2009, the company expects the following total company GAAP results: revenue of $1.3 billion to $1.7 billion and net income per diluted share of $0.25 to $0.75. GAAP earnings per share guidance include approximately $0.20 per share of expense for non-cash charges related to the adoption of FASB accounting rule FSB APB 14-1.

72. In addition to the foregoing, this release also quoted Defendant Werner, in part, as follows:

"The first quarter of 2009 was the most challenging quarter we've seen since SunPower went public in 2005," said Tom Werner, SunPower's CEO. "Our quarterly performance was impacted by seasonality, the continuing effects of the credit crisis and difficult economic conditions. Despite these headwinds we were able to deliver strong gross margins in our Components business and positive non-GAAP net income. We have responded to current market conditions by moving to a demand-driven manufacturing model and reducing our planned operating expenses to align with our adjusted revenue outlook. Our recent announcements with FPL Group, Exelon and Xcel are representative of the range of opportunities in our utility and power plant business pipeline. Looking forward, we see positive trends emerging in a number of market segments, including the rooftop, distributed power plant and utility markets that give us confidence that we are well positioned for growth in the second half of 2009, 2010 and beyond.

"We were also pleased to announce today our expanded partnership with FPL Group through a significant supply agreement for future solar projects. This builds on our successful commencement of construction of the 25 megawatt DeSoto Next Generation Solar Energy Center in the first quarter of 2009. We look forward to working with FPL Group on future solar power plants around the country," Werner concluded.

73. Taking further advantage of the artificial inflation in the price of SunPower shares caused as a result of the publication by Defendants of materially false and misleading information, on April 27, 2009, Defendants also announced that they had registered for sale 9 million shares of common stock as well as $175 million of senior convertible debt. This sale ultimately resulted in the sale of 10.350 million shares of Company stock valued at $227.7 million in addition to $230 million in Senior Convertible debt.

74. **1Q:09 Form 10-Q.** Later, on or about May 8, 2009, Defendants filed with the SEC the Company's 1Q:09 Form 10-Q, for the quarter ended March 30, 2009, signed by Defendant Arriola and certified by Defendants Werner and Arriola. In addition to making substantially similar statements concerning the Company operations, revenue costs and expense ratios, the Company's 1Q:09 Form 10-Q also stated, in part, the following:

**Basis of Presentation**

CLASS ACTION COMPLAINT                          - 39 -

339416 V1

The accompanying condensed consolidated interim financial statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC") regarding interim financial reporting and include the accounts of the Company and all of its subsidiaries. Intercompany transactions and balances have been eliminated in consolidation. The year-end Condensed Consolidated Balance Sheet data was derived from audited financial statements adjusted for the retrospective application of FSP APB 14-1 discussed above. Accordingly, these financial statements do not include all of the information and footnotes required by generally accepted accounting principles for complete financial statements and should be read in conjunction with the financial statements and notes thereto included in the Company's Annual Report on Form 10-K for the year ended December 28, 2008.

\* \* \*

In the opinion of management, the accompanying condensed consolidated interim financial statements contain all adjustments, consisting only of normal recurring adjustments, which the Company believes are necessary for a fair statement of the Company's financial position as of March 29, 2009 and its results of operations for the three months ended March 29, 2009 and March 30, 2008 and its cash flows for the three months ended March 29, 2009 and March 30, 2008. These condensed consolidated interim financial statements are not necessarily indicative of the results to be expected for the entire year.

75.    **Cost of Revenues.** The 1Q:09 Form 10-Q also reported the Company's purported Cost of Revenue (as a percentage of revenue and the year-over-year change) for its two segments, as follows:

| | Three Months Ended | | | | | |
| | Systems | | Components | | Consolidated | |
| (Dollars in thousands) | March 29, 2009 | March 30, 2008 | March 29, 2009 | March 30, 2008 | March 29, 2009 | March 30, 2008 |
|---|---|---|---|---|---|---|
| Amortization of intangible assets | $ 1,841 | $ 2,168 | $ 952 | $ 1,044 | $ 2,793 | $ 3,212 |
| Stock-based compensation | 298 | 2,511 | 525 | 1,203 | 823 | 3,714 |
| Impairment of long-lived assets | — | 1,343 | — | 4,146 | — | 5,489 |
| Non-cash interest expense | 230 | 36 | 270 | 52 | 500 | 88 |
| Factory pre-operating costs | 236 | 267 | 355 | 386 | 591 | 653 |
| Restructuring charges | 179 | — | 28 | — | 207 | — |
| Materials and other cost of revenue | 85,567 | 136,939 | 75,558 | 70,411 | 161,125 | 207,350 |
| Total cost of revenue | $ 88,351 | $ 143,264 | $ 77,688 | $ 77,242 | $ 166,039 | $ 220,506 |
| Total cost of revenue as a percentage of revenue | 83% | 80% | 72% | 81% | 78% | 81% |
| Total gross margin percentage | 17% | 20% | 28% | 19% | 22% | 19% |

Total Cost of Revenue: During the three months ended March 29, 2009 and March 30, 2008, our total cost of revenue was $166.0 million and $220.5 million, respectively, which represents a decrease of 25%. The decrease in total cost of revenue corresponds with the decrease of 22% in total revenue during the three months ended March 29, 2009 compared to the same period in 2008. As a

percentage of total revenue, our total cost of revenue decreased to 78% in the three months ended March 29, 2009 compared to 81% in the three months ended March 30, 2008. This decrease in total cost of revenue as a percentage of total revenue is reflective of (i) decreased costs of polysilicon beginning in the second quarter of fiscal 2008; (ii) improved manufacturing economies of scale associated with markedly higher production volume; (iii) reduced expenses associated with the amortization of intangible assets and stock-based compensation; and (iv) one-time asset impairment charges of $5.5 million in the first quarter of fiscal 2008 relating to the wind down of our imaging detector product line and for the write-down of certain solar product manufacturing equipment which became obsolete due to new processes (the costs associated with the $3.3 million write-down of certain solar product manufacturing equipment was recovered from the vendor in the third quarter of fiscal 2008). This decrease in total cost of revenue as a percentage of total revenue was partially offset by restructuring charges of $0.2 million in the first quarter of fiscal 2009 and higher amortization of capitalized non-cash interest expense associated with the adoption of Financial Accounting Standards Board, or FASB, Staff Position, or FSP, Accounting Principles Board, or APB, 14-1, "Accounting for Convertible Debt Instruments That May Be Settled in Cash upon Conversion (Including Partial Cash Settlement)," or FSP APB 14-1 (See Note 1 and 3 of Notes to our Condensed Consolidated Financial Statements).

76.    **Controls.** In addition to the foregoing, the Company's 1Q:09 Form 10-Q also contained

statements regarding the sufficiency and adequacy of the Company's Controls and Procedures that

stated, in part, the following:

### Evaluation of Disclosure Controls and Procedures

We maintain "disclosure controls and procedures," as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended ("Exchange Act"), that are designed to ensure that information required to be disclosed by us in reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in Securities and Exchange Commission rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure. In designing and evaluating our disclosure controls and procedures, management recognized that disclosure controls and procedures, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the disclosure controls and procedures are met. Additionally, in designing disclosure controls and procedures, our management is required to apply its judgment in evaluating the cost-benefit relationship of possible disclosure controls and procedures. The design of any disclosure controls and procedures also is based in part upon certain assumptions about the likelihood of future events, and there can be no assurance that any design will succeed in achieving its stated goals under all potential future conditions.

Based on their evaluation as of the end of the period covered by this Quarterly Report on Form 10-Q and subject to the foregoing, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective.

77. **Certifications.** In addition to the foregoing, the Company's 1Q:09 Form 10-Q also contained long and short-form certifications by Defendants Werner and Arriola, that attested to the purported accuracy and completeness of the Company's financial and operational reports as well as statements concerning the Company's controls and procedures, as follows:

<div align="center">

**CERTIFICATION OF CHIEF EXECUTIVE OFFICER AND
CHIEF FINANCIAL OFFICER PURSUANT TO
18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

</div>

In connection with the Quarterly Report of SunPower Corporation (the "Company") on Form 10-Q for the period ended March 29, 2009 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), Thomas H. Werner and Dennis V. Arriola certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of his knowledge and belief:

(1)     The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)     The information contained in the Report fairly presents, in all material respects, the financial condition and result of operations of the Company.

Dated: May 8, 2009

<div align="right">

/ S / T HOMAS H. W ERNER
_____
Thomas H. Werner
Chief Executive Officer
(Principal Executive Officer)

/S/ DENNIS V. ARRIOLA
_____
Dennis V. Arriola
Senior Vice President and Chief Financial Officer
(Principal Financial and Accounting Officer)

</div>

78.     The statements contained in SunPower's April 23, 2009 release and those statements contained in the Company's 1Q:09 Form 10-Q, referenced above, were each materially false and misleading when made, and were known by Defendants to be false or were deliberately disregarded as such thereby, for the reasons stated herein in ¶ 39, *supra*.

79.     **2Q:09 Results Announced.** On July 23, 2009, SunPower published a release announcing results for the second quarter ended June 28, 2009 and reiterated guidance for the remainder of 2009. This release also stated, in part, the following:

SunPower Reports Second-Quarter 2009 Results

---- Q2 2009 revenue of $298 million, GAAP EPS of $0.26 and non-GAAP EPS of $0.24 ---- Raised $458 million in a successful equity and convertible debt offering -- -- Implemented a regional panel manufacturing strategy ---- Launched the company's new T5 fixed-tilt commercial roof mounting system ---- Substantially completed a 25 megawatt project for Florida Power & Light ---- Expanded to approximately 600 SunPower dealers worldwide ---- Signed a $100 million commercial project financing agreement with Wells Fargo Bank

SAN JOSE, Calif., July 23, 2009 /PRNewswire-FirstCall via COMTEX News Network/ -- SunPower Corp. (Nasdaq: SPWRA, SPWRB) today announced financial results for its 2009 second quarter which ended June 28, 2009. Revenue for the 2009 second quarter was $298 million which compares to revenues of $214 million in the first quarter of 2009 and $383 million in the second quarter of 2008. The company's Components and Systems segments accounted for 63% and 37% of second-quarter 2009 revenue, respectively.

80.     In addition to the foregoing, the Company's July 23, 2009 release also provided purported

guidance, in part, as follows:

2009 Guidance

The company adjusted its fiscal year 2009 total company non-GAAP guidance as follows: total revenue of $1.35 billion to $1.7 billion, which compares to previous guidance of $1.3 billion to $1.7 billion, net income per diluted share of $1.15 to $1.60 and production of approximately 400 megawatts. The company's 2009 capital expenditure outlook remains unchanged at $250 million to $300 million. Full year 2009 non-GAAP earnings per share guidance was adjusted to reflect the capital raise completed issuance of equity and convertible debt in May 2009.

"Our current pipeline and backlog gives us confidence that we will be able to meet our second half 2009 guidance. This confidence stems from a number of large systems we expect to have financed in the third quarter, as well as the positive trends we are seeing in the commercial and residential segments," said Dennis Arriola, SunPower's CFO.

81.     For fiscal year 2009, the company expects the following total company GAAP results:

revenue of $1.35 billion to $1.7 billion and net income per diluted share of $0.45 to $0.90. GAAP

earnings per share guidance includes a $0.21 per share one-time, non-taxable gain related to the

company's recent offering and an approximately $0.12 expense for non-cash charges related to the

company's previous adoption of FASB accounting rule FSB APB 14-1In addition to the foregoing,

this release also quoted Defendant Werner, in part, as follows:

"Our second-quarter results reflect the continued success of our diversified segment and market strategy as we benefited from the further growth in our dealer network and executed on our large scale project commitments," said Tom Werner, SunPower's CEO. "Additionally, our operational focus during the quarter enabled us to show progress in reducing inventory levels and in controlling variable expenses. Our long-term strategy to build our brand based on superior experience, technology and return is paying off. As a result, we have successfully adjusted pricing to

CLASS ACTION COMPLAINT                                          - 43 -

1   maintain market share and our price premium.

2   "Overall, we recorded solid second-quarter results in a demand driven market, consistent with our operating plan. In all of our markets, we are encouraged by the

3   improving industry trends we are seeing in both end demand and financing and we are well positioned for further growth in the second half of the year and 2010. Our

4   manufacturing costs are competitive today and we are ahead of plan to achieve our cost reduction goals. Customers continue to choose SunPower due to our superior

5   roof top and power plant experience, industry leading performance of our solar panels and tracking technology, and our ability to drive attractive project returns for

6   our customers."

7   82.   **2Q:09 Form 10-Q.** Later, on or about August 3, 2009, Defendants filed with the SEC the

8   Company's 2Q:09 Form 10-Q, for the quarter ended June 28, 2009, signed by Defendant Arriola

9   and certified by Defendants Werner and Arriola. In addition to making substantially similar

10   statements concerning the Company operations, revenue costs and expense ratios, the Company's

11   2Q:09 Form 10-Q also stated, in part, the following:

12   **Basis of Presentation**

13           The accompanying condensed consolidated interim financial statements have been prepared pursuant to the rules and regulations of the Securities and Exchange

14   Commission ("SEC") regarding interim financial reporting and include the accounts of the Company and all of its subsidiaries. Intercompany transactions and balances

15   have been eliminated in consolidation. The year-end Condensed Consolidated Balance Sheet data was derived from audited financial statements as adjusted for the

16   retrospective application of FSP APB 14-1 discussed above. Accordingly, these financial statements do not include all of the information and footnotes required by

17   GAAP for complete financial statements and should be read in conjunction with the financial statements and notes thereto included in the Company's Annual Report on

18   Form 10-K for the year ended December 28, 2008.

19                                          * * *

20           In the three months ended June 28, 2009, the Company identified certain adjustments related to fiscal 2008, primarily due to systems costs and inventory that

21   resulted in recording additional out of period costs of approximately $2.1 million. The effect of these items is not material to estimated pre-tax or net income for the

22   current year.

23           In the opinion of management, the accompanying condensed consolidated interim financial statements contain all adjustments, consisting only of normal

24   recurring adjustments, which the Company believes are necessary for a fair statement of the Company's financial position as of June 28, 2009 and its results of

25   operations for the three and six months ended June 28, 2009 and June 29, 2008 and its cash flows for the six months ended June 28, 2009 and June 29, 2008. These

26   condensed consolidated interim financial statements are not necessarily indicative of the results to be expected for the entire year.

27

28

83.     **Cost of Revenues.** The 2Q:09 Form 10-Q also reported the Company's purported Cost of

Revenue (as a percentage of revenue and the year-over-year change) for its two segments, as

follows:

| | Three Months Ended | | | | | |
| | Systems | | Components | | Consolidated | |
| (lars in thousands) | June 28, 2009 | June 29, 2008 | June 28, 2009 | June 29, 2008 | June 28, 2009 | June 29, 2008 |
|---|---|---|---|---|---|---|
| ortization of other intangible assets | 1,841 | 1,841 | 954 | 1,066 | 2,795 | 2,907 |
| k-based compensation | 1,474 | 2,239 | 3,156 | 2,890 | 4,630 | 5,129 |
| -cash interest expense | 347 | 65 | 893 | 80 | 1,240 | 145 |
| erials and other cost of revenue | 88,131 | 205,078 | 142,385 | 76,652 | 230,516 | 281,730 |
| il cost of revenue | 91,793 | 209,223 | 147,388 | 80,688 | 239,181 | 289,911 |
| il cost of revenue as a percentage of revenue | 84 | 77 | 78 | 72 | 80 | 76 |
| il gross margin percentage | 16% | 23% | 22% | 28% | 20% | 24% |

| | Six Months Ended | | | | | |
| | Systems | | Components | | Consolidated | |
| (lars in thousands) | June 28, 2009 | June 29, 2008 | June 28, 2009 | June 29, 2008 | June 28, 2009 | June 29, 2008 |
|---|---|---|---|---|---|---|
| ortization of other intangible assets | 3,682 | 4,009 | 1,906 | 2,110 | 5,588 | 6,119 |
| k-based compensation | 1,772 | 4,750 | 3,681 | 4,093 | 5,453 | 8,843 |
| airment of long-lived assets | --- | 1,343 | | 4,146 | | 5,489 |
| -cash interest expense | 577 | 101 | 1,163 | 132 | 1,740 | 233 |
| erials and other cost of revenue | 174,113 | 342,284 | 218,326 | 147,449 | 392,439 | 489,733 |
| il cost of revenue | 180,144 | 352,487 | 225,076 | 157,930 | 405,220 | 510,417 |
| il cost of revenue as a percentage of revenue | 84 | 78 | 76 | 76 | 79 | 78 |
| il gross margin percentage | 16% | 22% | 24% | 24% | 21% | 22% |

Total Cost of Revenue: We had 14 and 8 active solar cell manufacturing lines in
our two solar cell manufacturing facilities as of June 28, 2009 and June 29, 2008,
respectively, with a total rated annual solar cell manufacturing capacity of 494
megawatts and 254 megawatts, respectively. During the three and six months ended
June 28, 2009, our two solar cell manufacturing facilities operated at approximately
49% and 61% capacity, respectively, producing only 63.6 megawatts and 157.3
megawatts, respectively, as compared to the three and six months ended June 29,
2008 when our facilities operated at approximately 74% and 71% capacity,
respectively, producing 49.8 megawatts and 88.3 megawatts, respectively. During
the three and six months ended June 28, 2009, our total cost of revenue was $239.2
million and $405.2 million, respectively, which represented decreases of 17% and
21%, respectively, compared to the total cost of revenue reported in the comparable
periods of 2008. As a percentage of total revenue, our total cost of revenue
increased to 80% and 79% in the three and six months ended June 28, 2009,
respectively, compared to 76% and 78% in the three and six months ended June 29,
2008, respectively. This increase in total cost of revenue as a percentage of total
revenue is reflective of: (i) lower factory utilization due to our planned transition to
a demand driven manufacturing strategy to reduce inventory levels and (ii) higher

339416 V1

amortization of capitalized non-cash interest expense associated with the adoption of Financial Accounting Standards Board, or FASB, Staff Position, or FSP, Accounting Principles Board, or APB, 14-1, "Accounting for Convertible Debt Instruments That May Be Settled in Cash upon Conversion (Including Partial Cash Settlement)," or FSP APB 14-1. This increase in total cost of revenue as a percentage of total revenue was partially offset by: (i) decreased costs of polysilicon beginning in the second quarter of fiscal 2008; (ii) reduced expenses associated with the amortization of other intangible assets and stock-based compensation; and (iii) one-time asset impairment charges of $5.5 million in the first quarter of fiscal 2008 relating to the wind down of our imaging detector product line and for the write-down of certain solar product manufacturing equipment which became obsolete due to new processes (the costs associated with the $3.3 million write-down of certain solar product manufacturing equipment was recovered from the vendor in the third quarter of fiscal 2008).

Systems Segment Cost of Revenue: Our cost of systems revenue consists primarily of solar panels, mounting systems, inverters and subcontractor costs. The cost of solar panels is the single largest cost element in our cost of systems revenue. Our Systems Segment sourced virtually all of its solar panel installations with SunPower solar panels in the three and six months ended June 28, 2009, as compared to 61% and 52% for the three and six months ended June 29, 2008, respectively. Our Systems Segment generally experiences higher gross margin on construction projects that utilize SunPower solar panels compared to construction projects that utilize solar panels purchased from third-parties.

Systems Segment Gross Margin: Gross margin was $16.9 million and $34.7 million for the three and six months ended June 28, 2009, respectively, or 16% of systems revenue. Gross margin was $61.4 million and $97.0 million for the three and six months ended June 29, 2008, respectively, or 23% and 22%, respectively, of systems revenue. Gross margin decreased due to lower average selling prices for our solar power systems and system group department overhead costs incurred that are fixed in nature when systems revenue decreased 60% and 52% in the three and six months ended June 28, 2009, respectively, as compared to the same periods in 2008.

84.     **Controls.** In addition to the foregoing, the Company's 2Q:09 Form 10-Q also contained statements regarding the sufficiency and adequacy of the Company's Controls and Procedures that stated, in part, the following:

**Evaluation of Disclosure Controls and Procedures**

We maintain "disclosure controls and procedures," as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended ("Exchange Act"), that are designed to ensure that information required to be disclosed by us in reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in Securities and Exchange Commission rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure. In designing and evaluating our disclosure controls and procedures, management recognized that disclosure controls and procedures, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the disclosure controls and procedures are met. Additionally, in designing disclosure controls and procedures, our management is

required to apply its judgment in evaluating the cost-benefit relationship of possible disclosure controls and procedures. The design of any disclosure controls and procedures also is based in part upon certain assumptions about the likelihood of future events, and there can be no assurance that any design will succeed in achieving its stated goals under all potential future conditions.

Based on their evaluation as of the end of the period covered by this Quarterly Report on Form 10-Q and subject to the foregoing, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective.

85. **Certifications.** In addition to the foregoing, the Company's 2Q:09 Form 10-Q also contained certifications by Defendants Werner and Arriola that attested to the purported accuracy and completeness of the Company's financial and operational reports as well as statements concerning the Company's controls and procedures, an example of which follows:

**CERTIFICATION OF CHIEF EXECUTIVE OFFICER AND CHIEF FINANCIAL OFFICER PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Quarterly Report of SunPower Corporation (the "Company") on Form 10-Q for the period ended June 28, 2009 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), Thomas H. Werner and Dennis V. Arriola certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of his knowledge and belief:

(1)     The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)     The information contained in the Report fairly presents, in all material respects, the financial condition and result of operations of the Company.

Dated: July 31, 2009

/S/ THOMAS H. WERNER
_____
Thomas H. Werner
Chief Executive Officer
(Principal Executive Officer)

/s/   DENNIS V. ARRIOLA
_____
Dennis V. Arriola
Senior Vice President and Chief Financial Officer
(Principal Financial and Accounting Officer)

86.     The statements contained in SunPower's July 23, 2009 release and those statements contained in the Company's 2Q:09 Form 10-Q, referenced above, were each materially false and

1  misleading when made, and were known by Defendants to be false or were deliberately

2  disregarded as such thereby, for the reasons stated herein in ¶ 39, *supra*.

3  87.  **3Q:09 Results Announced**. On October 22, 2009, SunPower published a release

4  announcing results for the third quarter ended September 27, 2009, reiterating guidance for the

5  remainder of 2009. This release also stated, in part, the following:

6  **SunPower Reports Third-Quarter 2009 Results**

7  -  Record Q3 2009 revenue of $466 million, record production of 110 megawatts

8  -  GAAP EPS of $0.13 and non-GAAP EPS of $0.42

9
10  -  24 megawatt Montalto power plant in Italy financed - expected completion Q4 2009

11  -  Grew global dealer network to approximately 900 partners

12  -  Signed a 14-megawatt supply agreement with Casino Group in France

13  -  Commissioned 25-megawatt project for Florida Power & Light and began construction of an additional 10-megawatt power plant

14
15  -  Fab 3 construction in Malaysia on plan; production scheduled for the second half of 2010

16  -  Further strengthened balance sheet - more than $800 million in cash and investments

17  SAN JOSE, Calif., Oct 22, 2009 /PRNewswire-FirstCall via COMTEX News Network/ --

18  SunPower Corp. (Nasdaq: SPWRA, SPWRB) today announced financial results for its 2009 third

19  quarter which ended September 27, 2009. Revenue for the 2009 third quarter was $466 million

20  which compares to $298 million in the second quarter of 2009 and $378 million in the third quarter

21  of 2008. The company's Components and Systems segments accounted for 64% and 36% of third-

22  quarter 2009 revenue, respectively.

23  88.  In addition to the foregoing, the Company's October 22, 2009 release also provided

24  purported guidance, in part, as follows:

25  **2009 Guidance**

26  The company updated its fiscal year 2009 total company non-GAAP guidance as follows: total revenue of $1.425 billion to $1.50 billion, net income per diluted share of $1.15 to $1.25, capital expenditures of $200 million to $225 million, and production of approximately 400 MW.

27
28

CLASS ACTION COMPLAINT                     - 48 -

"The company's continued focus on working capital management is showing positive results as we successfully managed inventory levels and ended the quarter with a stronger balance sheet and more than $800 million in cash and investments," said Dennis Arriola, SunPower's CFO. "Although the financing markets remain challenging, we're starting to see some improvement in the availability of financing for our projects. By starting the fourth quarter with a solid backlog of business and a growing pipeline of opportunities, we are confident that SunPower will finish the year strongly and is well positioned for growth in 2010."

For fiscal year 2009, the company expects the following total company GAAP results: revenue of $1.425 billion to $1.50 billion and net income per diluted share of $0.50 to $0.60. GAAP earnings per share guidance for 2009 includes a $0.21 per share one-time, non-taxable gain related to the company's second-quarter 2009 capital raise and approximately $0.13 per share for non-cash charges related to the company's adoption of new accounting guidance.

89.     In addition to the foregoing, this release also quoted Defendant Werner, in part, as follows:

"Our third-quarter results demonstrate the value of our diversified market and vertical integration strategy as we benefitted from our growing dealer channel and successfully executed on our large scale project commitments," said Tom Werner, SunPower's CEO. "We further expanded our dealer partner network into countries such as France, Korea and Canada, and added new partners to our existing markets. As we build our utility and power plant business around the world, our superior technology performance and rapid deployment capability continues to make SunPower a preferred partner with customers and financiers.

"Our third-quarter results demonstrate the value of our diversified market and vertical integration strategy as we benefitted from our growing dealer channel and successfully executed on our large scale project commitments," said Tom Werner, SunPower's CEO. "We further expanded our dealer partner network into countries such as France, Korea and Canada, and added new partners to our existing markets. As we build our utility and power plant business around the world, our superior technology performance and rapid deployment capability continues to make SunPower a preferred partner with customers and financiers.

"Operationally, our global Engineering, Procurement and Construction team achieved a new record in the third quarter with more than 60 megawatts (MW) of SunPower power plants under construction. The 25-MW DeSoto power plant, commissioned for Florida Power & Light, has now surpassed Nellis Air Force Base as the largest operating solar photovoltaic power plant in North America. In Europe, the financing of our Montalto project, the largest power plant in Italy, demonstrates SunPower's bankability as a fully integrated supplier. With strong market demand continuing, all of our manufacturing facilities are now fully operational, resulting in unit cost reductions in line with our plan," concluded Werner.

339416 V1

90.    The statements contained in SunPower's October 22, 2009 release, referenced above, were

each materially false and misleading when made, and were known by Defendants to be false or

were deliberately disregarded as such thereby, for the reasons stated herein in ¶ 39, *supra*.

## THE TRUE FINANCIAL AND OPERATIONAL
## CONDITION OF SUNPOWER IS BELATED DISCLOSED

91.    On November 16, 2009, after the close of trading, Defendants shocked investors when

SunPower issued a release which announced that it had identified "Unsubstantiated Accounting

Entries," and that, as a result, the Company would be forced to restate its financial results for all of

2008 and the first three quarters of 2009. At that time, Defendants published a release that stated, in

part, the following:

SunPower Internal Review Identifies Unsubstantiated Accounting Entries

SAN JOSE, Calif., Nov 16, 2009 /PRNewswire-FirstCall via COMTEX News Network/ -- SunPower Corp. (Nasdaq: SPWRA, SPWRB) today announced that based upon an internal review of its Philippine manufacturing operations, the company believes there may have been unsubstantiated accounting entries made in the first three quarters of 2009, some of which relate to the company's fiscal year ended December 28, 2008. Management informed the Audit Committee of the Board of Directors of these entries and the Audit Committee immediately commenced an investigation of the matter, which is ongoing. The company's Audit Committee and management have discussed these issues with the company's independent auditors.

Based upon the preliminary findings of the ongoing investigation, the Audit Committee to date has identified accounting entries in the Philippines that may have overstated expenses in its cost of goods sold of approximately $1 million in the first quarter ending March 29, 2009, and understated expenses in its cost of goods sold of approximately $14 million in the second quarter ending June 28, 2009 and approximately $2 million in the third quarter ending September 27, 2009. The company previously reported 2009 quarterly revenues and operating income under Generally Accepted Accounting Principles (GAAP) of $213.8 million and a loss of $2.5 million, respectively, in the first quarter, $297.6 million and $9.9 million, respectively, in the second quarter and $466.3 million and $34.6 million, respectively, in the third quarter. Full-year 2008 revenues were reported of $1,434.9 million and GAAP operating income of $167.5 million.

If the preliminary investigation findings prove to be final, they could impact the company's previously reported interim 2009 financial results. The company is also in the process of evaluating the financial impact of these adjustments on its previously reported results for the fiscal year and interim periods ended December 28, 2008. The company currently estimates that approximately $9 million of the identified accounting entries should have been recorded in 2008.

CLASS ACTION COMPLAINT                                        - 50 -

339416 V1

92.     Based on the huge disparity between Defendants' prior guidance, the Company's past performance, and the impact that the impending restatement would foreseeably have on the financial results of the Company, the following day, November 17, 2009, shares of the Company immediately collapsed as trading in SunPower shares resumed, falling approximately 20% each during that single trading day and closing at just over $22.00 per share, compared to the prior day's close of about $27.00.

93.     The market for SunPower's common stock was open, well-developed, and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, SunPower common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired SunPower common stock relying upon the integrity of the market price of SunPower common stock and market information relating to SunPower, and have been damaged thereby.

94.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of SunPower common stock by publicly issuing false and misleading.statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business, and its operations, as alleged herein.

95.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about SunPower's business, prospects, and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of SunPower and its business, prospects, and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class

1    purchasing the Company's common stock at artificially inflated prices, thus causing the damages

2    complained of herein.

3                              **CAUSATION AND ECONOMIC LOSS**

4    96.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the

5    market, and a course of conduct that artificially inflated SunPower's stock price and operated as a

6    fraud or deceit on Class Period purchasers of SunPower's stock by misrepresenting the Company's

7    financial results. Over a period of approximately eighteen months, Defendants improperly inflated

8    the Company's financial results. Ultimately, however, when Defendants' prior misrepresentations

9    and fraudulent conduct came to be revealed and were apparent to investors, shares of SunPower

10   declined precipitously – evidence that the prior artificial inflation in the price of SunPower's shares

11   was eradicated. As a result of their purchases of SunPower stock during the Class Period, Plaintiff

12   and other members of the Class suffered economic losses, *i.e.* damages under the federal securities

13   laws.

14   97.     By improperly characterizing the Company's financial results and misrepresenting its

15   prospects, the Defendants presented a misleading image of SunPower's business and future growth

16   prospects. During the Class Period, Defendants repeatedly emphasized the ability of the Company

17   to monitor and control its operations and expenses, and consistently reported results within the

18   range of guidance sponsored or endorsed by the Company. These claims caused and maintained the

19   artificial inflation in SunPower's stock price throughout the Class Period and until the truth about

20   the Company was ultimately revealed to investors.

21   98.     As a direct result of Defendants' statements on November 17, 2008, which indicated that

22   the Company would be forced to restate its financial results and take massive charges, the price of

23   SunPower shares traded to a low of $22.00 per share – a decline of over 20% compared to the price

24   of SunPower shares on November 16, 2008, the time before news of Defendants' illegal and

25   improper accounting scheme reached the market. This dramatic share price decline eliminated

26   much of the artificial inflation from SunPower's share price, causing real economic loss to

27   investors who purchased this stock during the Class Period.

28

CLASS ACTION COMPLAINT                        - 52 -

339416 V1

99.     In sum, as the truth about Defendants' fraud and illegal course of conduct became known to investors, and as the artificial inflation in the price of SunPower shares was eliminated, Plaintiff and the other members of the Class were damaged, suffering a material economic loss.

100.    The decline in SunPower's stock price at the end of the Class Period was a direct result of the nature and extent of Defendants' fraud being revealed to investors and to the market. The timing and magnitude of SunPower's stock price decline negates any inference that the losses suffered by Plaintiff and the other members of the Class was caused by changed market conditions, macroeconomic or industry factors, or even Company-specific facts unrelated to Defendants' fraudulent conduct. During the same period in which SunPower's share price fell over 20% as a result of Defendants fraud being revealed, the Standard & Poor's 500 securities index was relatively unchanged.

101.    The economic loss, *i.e.* damages suffered by Plaintiff and other members of the Class, was a direct result of Defendants' fraudulent scheme to artificially inflate the price of SunPower's stock and the subsequent significant decline in the value of the Company's shares when Defendants' prior misstatements and other fraudulent conduct was revealed, as indicated by the chart below:



## ADDITIONAL SCIENTER ALLEGATIONS

102.    As alleged herein, Defendants acted with scienter in that each Defendant knew that the public documents and statements issued or disseminated in the name of the Company were

1   materially false and misleading; knew that such statements or documents would be issued or

2   disseminated to the investing public; and knowingly and substantially participated or acquiesced in

3   the issuance or dissemination of such statements or documents as primary violations of the federal

4   securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of

5   information reflecting the true facts regarding SunPower, their control over, and/or receipt and/or

6   modification of SunPower's allegedly materially misleading misstatements and/or their

7   associations with the Company which made them privy to confidential proprietary information

8   concerning SunPower, participated in the fraudulent scheme alleged herein.

9   103.    Defendants were motivated to materially misrepresent to the SEC and investors the true

10   financial condition of the Company because the scheme: (i) deceived the investing public regarding

11   SunPower's business, operations, and management and the intrinsic value of SunPower common

12   stock; (ii) enabled Defendants to register for sale and sell hundreds of millions of dollars in

13   SunPower stock on behalf of the Company and its early-stage investors; (iii) enabled SunPower

14   insiders, certain of which are named as Defendants herein, to sell tens of millions of dollars of their

15   privately-held SunPower shares while in possession of material adverse non-public information

16   about the Company; and (v) caused Plaintiff and other members of the Class to purchase SunPower

17   common stock at artificially inflated prices. The insider stock sales which occurred within the

18   Class Period are set forth below:

| Date | Insider | Shares | Sale/Disposition Price Per Share | Value |
|---|---|---|---|---|
| 12-Nov-09 | ARRIOLA DENNIS V Officer | 7,780 | $25.72 | $200,101 |
| 11-Nov-09 | BUFE UWE-ERNST Director | 605 | $27.30 | $16,516 |
| 10-Nov-09 | ATKINS BETSY S Director | 600 | $27.32 | $16,392 |
| 23-Oct-09 | WERNER THOMAS Officer | 25,000 | $28.64 - $29.76 | $730,000 |
| 12-Oct-09 | ATKINS BETSY S Director | 600 | $31.89 | $19,134 |
| 1-Oct-09 | LEDESMA BRUCE Officer | 1,000 | $29.75 | $29,750 |
| 16-Sep-09 | RICHARDS DOUGLAS J. | 4,015 | $30.57 | $122,738 |

CLASS ACTION COMPLAINT                - 54 -

339416 V1

| | Date | Name / Title | Shares | Price | Total |
|---|---|---|---|---|---|
| | | Officer | | | |
| | 11-Sep-09 | RICHARDS DOUGLAS J. Officer | 2,235 | $29.15 | $65,150 |
| | 10-Sep-09 | ATKINS BETSY S Director | 600 | $27.51 - $27.58 | $17,000 |
| | 8-Sep-09 | LEDESMA BRUCE Officer | 1,000 | $26.72 | $26,720 |
| | 17-Aug-09 | ATKINS BETSY S Director | 4,992 | $26.66 | $133,086 |
| | 11-Aug-09 | BUFE UWE-ERNST Director | 548 | $30.11 | $16,500 |
| | 10-Aug-09 | ATKINS BETSY S Director | 600 | $30.65 - $30.76 | $18,000 |
| | 7-Aug-09 | BUFE UWE-ERNST Director | 396 | $30.69 | $12,153 |
| | 5-Aug-09 | BUFE UWE-ERNST Director | 300 | $31.04 | $9,312 |
| | 4-Aug-09 | LEDESMA BRUCE Officer | 1,000 | $31.96 | $31,960 |
| | 24-Jul-09 | WERNER THOMAS Officer | 25,000 | $29.71 - $31.95 | $771,000 |
| | 10-Jul-09 | ATKINS BETSY S Director | 600 | $23.54 | $14,124 |
| | 8-Jul-09 | LEDESMA BRUCE Officer | 1,000 | $23.92 | $23,920 |
| | 2-Jul-09 | NEESE MARTY T Officer | 5,959 | $26.23 | $156,304 |
| | 10-Jun-09 | ATKINS BETSY S Director | 600 | $31.37 | $18,822 |
| | 3-Jun-09 | LEDESMA BRUCE Officer | 1,000 | $29.95 | $29,950 |
| | 14-May-09 | LEDESMA BRUCE Officer | 1,000 | $25.25 | $25,250 |
| | 13-May-09 | RICHARDS DOUGLAS J. Officer | 890 | $26.50 | $23,585 |
| | 12-May-09 | WERNER THOMAS Officer | 25,000 | $26.91 - $28.35 | $691,000 |
| | 11-May-09 | ATKINS BETSY S Director | 600 | $28.19 | $16,914 |
| | 4-May-09 | SWANSON RICHARD M Officer | 269 | $30.21 | $8,126 |
| | 13-Apr-09 | ATKINS BETSY S Director | 600 | $25.12 | $15,072 |
| | 10-Mar-09 | ATKINS BETSY S Director | 600 | $25.60 - $25.63 | $15,00 |

| | | | | | |
|---|---|---|---|---|---|
| 1 | 10-Feb-09 | ATKINS BETSY S<br>Director | 600 | $36.000 | $21,600 |
| 2 | 4-Feb-09 | RICHARDS DOUGLAS J.<br>Officer | 1,813 | $33.71 - $33.85 | $61,000 |
| 3 | 2-Feb-09 | SHUGAR DANIEL S<br>Officer | 1,433 | $31.88 | $45,684 |
| 4 | | | | | |
| 5 | 2-Feb-09 | RICHARDS DOUGLAS J.<br>Officer | 1,251 | $31.88 | $39,881 |
| 6 | 2-Feb-09 | WENGER HOWARD<br>Officer | 1,753 | $31.88 | $55,885 |
| 7 | 2-Feb-09 | SWANSON RICHARD M<br>Officer | 1,225 | $31.88 | $39,053 |
| 8 | 2-Feb-09 | WERNER THOMAS<br>Officer | 7,320 | $31.88 | $233,361 |
| 9 | | | | | |
| 10 | 2-Feb-09 | LEDESMA BRUCE<br>Officer | 1,096 | $31.88 | $34,940 |
| 11 | 12-Jan-09 | ATKINS BETSY S<br>Director | 600 | $39.00 | $23,400 |
| 12 | 12-Jan-09 | WENGER HOWARD<br>Officer | 6,856 | $34.89 | $239,205 |
| 13 | 12-Jan-09 | LEDESMA BRUCE<br>Officer | 3,893 | $34.89 | $135,826 |
| 14 | | | | | |
| 15 | 10-Dec-08 | ATKINS BETSY S<br>Director | 600 | $31.21 | $18,726 |
| 16 | 10-Nov-08 | ATKINS BETSY S<br>Director | 600 | $35.47 | $21,282 |
| 17 | 13-Oct-08 | ATKINS BETSY S<br>Director | 100 | $51.16 | $5,116 |
| 18 | 10-Oct-08 | ATKINS BETSY S<br>Director | 600 | $38.20 | $22,920 |
| 19 | 11-Sep-08 | RICHARDS DOUGLAS J.<br>Officer | 3,125 | $79.13 - $80.12 | $249,000 |
| 20 | | | | | |
| 21 | 11-Sep-08 | RICHARDS DOUGLAS J.<br>Officer | 2,235 | $80.17 | $179,179 |
| 22 | 10-Sep-08 | ATKINS BETSY S<br>Director | 800 | $76 .00 | $60,800 |
| 23 | 26-Aug-08 | SWANSON RICHARD M<br>Officer | 21,000 | $91.87 - $92.54 | $1,936,000 |
| 24 | 18-Aug-08 | ATKINS BETSY S<br>Director | 1,000 | $92.41 | $92,410 |
| 25 | 18-Aug-08 | CYPRESS<br>SEMICONDUCTOR<br>CORP /DE/<br>Beneficial Owner (10%<br>or more) | 2,500,000 | $88.99 | $222,475,000 |
| 26 | | | | | |
| 27 | | | | | |
| 28 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 1 | 11-Aug-08 | ATKINS BETSY S<br>Director | 800 | $71.81 - $73.06 | $58,000 |
| 2<br>3 | 22-Jul-08 | WENGER HOWARD<br>Officer | 10,000 | $77.93 - $78.99 | $785,000 |
| 4 | 22-Jul-08 | WERNER THOMAS<br>Officer | 50,000 | $77.78 - $80.05 | $3,946,000 |
| 5 | 21-Jul-08 | SHUGAR DANIEL S<br>Officer | 18,000 | $80.02 | $1,440,360 |
| 6 | 14-Jul-08 | ATKINS BETSY S<br>Director | 100 | $73.06 | $7,306 |
| 7 | 10-Jul-08 | ATKINS BETSY S<br>Director | 700 | $65.50 | $45,850 |
| 8<br>9 | 10-Jun-08 | ATKINS BETSY S<br>Director | 800 | $74.75 | $59,800 |
| 10 | 27-May-08 | SWANSON RICHARD M<br>Officer | 14,045 | $82.59 - $83.00 | $1,166,000 |
| 11 | 27-May-08 | SWANSON RICHARD M<br>Officer | 6,955 | $83.46 - $84.67 | $585,000 |
| 12 | 14-May-08 | SHUGAR DANIEL S<br>Officer | 7,872 | $95.00 - $95.04 | $748,000 |
| 13<br>14 | 12-May-08 | ATKINS BETSY S<br>Director | 700 | $84.00 | $58,800 |
| 15 | 7-May-08 | ATKINS BETSY S<br>Director | 800 | $86.21 | $68,968 |
| 16 | 5-May-08 | SWANSON RICHARD M<br>Officer | 344 | $80.10 | $27,554 |
| 17<br>18 | 5-May-08 | HERNANDEZ<br>EMMANUEL T<br>Officer | 572 | $80.10 | $45,817 |
| 19 | 25-Apr-08 | HERNANDEZ<br>EMMANUEL T<br>Officer | 13,673 | $87.30 - $87.48 | $1,195,000 |
| 20<br>21 | 25-Apr-08 | HERNANDEZ<br>EMMANUEL T<br>Officer | 10,627 | $87.49 - $88.33. | $934,000 |
| 22<br>23 | 25-Apr-08 | HERNANDEZ<br>EMMANUEL T<br>Officer | 700 | $88.35 - $88.68 | $62,000 |
| 24 | 22-Apr-08 | SHUGAR DANIEL S<br>Officer | 12,155 | $95 - $95.15 | $1,156,000 |
| 25 | 22-Apr-08 | WERNER THOMAS<br>Officer | 19,668 | $93.03 - $95. | $1,849,000 |
| 26 | 22-Apr-08 | WERNER THOMAS<br>Officer | 30,332 | $92.35 - $93.00 | $2,811,000 |
| 27<br>28 | 10-Apr-08 | ATKINS BETSY S<br>Director | 100 | $87.85 | $8,785 |

| | | | | | |
|---|---|---|---|---|---|
| 1 | 7-Apr-08 | ATKINS BETSY S<br>Director | 600 | $93.89 | $56,334 |
| 2<br>3 | 25-Mar-08 | HERNANDEZ<br>EMMANUEL T<br>Officer | 25,000 | $67.92 | $1,698,000 |
| 4 | 11-Mar-08 | SWANSON RICHARD M<br>Officer | 7,000 | $58.96 | $412,720 |
| 5<br>6 | 10-Mar-08 | ATKINS BETSY S<br>Director | 100 | $59.37 | $5,937 |
| 7 | 7-Mar-08 | ATKINS BETSY S<br>Director | 500 | $61.96 | $30,980 |
| 8 | 5-Mar-08 | ATKINS BETSY S<br>Director | 100 | $67.20 | $6,720 |
| 9<br>10 | 25-Feb-08 | HERNANDEZ<br>EMMANUEL T<br>Officer | 25,000 | $68.15 | $1,703,750 |
| 11 | 13-Feb-08 | SHUGAR DANIEL S<br>Officer | 20,000 | $80.01 | $1,600,200 |
| 12 | 12-Feb-08 | SWANSON RICHARD M<br>Officer | 7,000 | $77.25 | $540,750 |
| 13 | 11-Feb-08 | ATKINS BETSY S<br>Director | 400 | $69.93 | $27,972 |
| 14<br>15 | 7-Feb-08 | ATKINS BETSY S<br>Director | 1,000 | $59.39 | $59,390 |
| 16 | 5-Feb-08 | ATKINS BETSY S<br>Director | 100 | $74.83 | $7,483 |
| 17 | 31-Jan-08 | WERNER THOMAS<br>Officer | 4,575 | $69.09 | $316,086 |
| 18 | 29-Jan-08 | WENGER HOWARD<br>Officer | 22,381 | $75.02 | $1,679,022 |
| 19<br>20 | 29-Jan-08 | PAI PANEMANGALORE<br>MADHAVARAYA<br>Officer | 22,500 | $73.19 | $1,646,775 |
| 21 | 29-Jan-08 | WERNER THOMAS<br>Officer | 50,000 | $71.70 | $3,585,000 |
| 22<br>23 | 25-Jan-08 | HERNANDEZ<br>EMMANUEL T<br>Officer | 25,000 | $74.20 | $1,855,000 |
| 24 | 16-Jan-08 | LEDESMA BRUCE<br>Officer | 7,717 | $97.10 | $749,320 |
| 25 | 10-Jan-08 | WENGER HOWARD<br>Officer | 6,718 | $110.71 | $743,749 |
| 26<br>27 | 10-Jan-08 | ATKINS BETSY S<br>Director | 100 | $108.00 | $10,800 |
| 28 | 10-Jan-08 | LEDESMA BRUCE<br>Officer | 3,888 | $110.71 | $430,440 |

## VIOLATIONS OF GAAP AND SEC REPORTING RULES

104.     During the Class period, Defendants materially misled the investing public, thereby inflating the price of the Company's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its financial performance, accounting, reporting, and financial condition in violation of the federal securities laws and GAAP.

105.     GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular time. Regulation S-X, to which the Company is subject as a registrant under the Exchange Act, 17 C.F.R. 210.4-01(a)(1), provides that financial statements filed with the SEC which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate. SEC Rule 13a-13 requires issuers to file quarterly reports.

106.     SEC Rule 12b-20 requires that periodic reports contain such further information as is necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

107.     In addition, Item 303 of Regulation S-K requires that, for interim periods, the Management Division and Analysis Section ("MD&A") must include, among other things, a discussion of any material changes in the registrant's results of operations with respect to the most recent fiscal year-to-date period for which an income statement is provided. Instructions to Item 303 require that the this discussion identify any significant elements of registrant's income or loss from continuing operations that are not necessarily representative of the registrant's ongoing business. Item 303(a)(2)(ii) to Regulation S-K requires the following discussion in the MD&A of a company's publicly filed reports with the SEC:

> Describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations. If the registrant knows of events that will cause a material change in the relationship between costs and revenues (such as known future increases in costs of labor or materials or price increases or

1    inventory adjustments), the change in relationship shall be disclosed.

2    Paragraph 3 of the Instructions to Item 303 states in relevant part:

3        The discussion and analysis shall focus specifically on material events and
         uncertainties known to management that would cause reported financial information
4        not to be necessarily indicative of future operating results or of future financial
         condition. This would include descriptions and amounts of (A) matters that would
5        have an impact on future operations and have not had an impact in the past...

6    108.    The GAAP requirement for recognition of an adequate provision for foreseeable costs and

7    an associated allowance applies to interim financial statements as required by Accounting

8    Principles Board Opinion No. 28. Paragraph 17 of this authoritative pronouncement states that:

9        The amounts of certain costs and expenses are frequently subjected to year-end
         adjustments even though they can be reasonably approximated at interim dates. To
10       the extent possible such adjustments should be estimated and the estimated costs
         and expenses assigned to interim periods so that the interim periods bear a
11       reasonable portion of the anticipated annual amount.

12   109.    Statements of Financial Accounting Standards No. 5, Accounting for Contingencies

13   ("FASB 5"), states that:

14   An estimated loss from a loss contingency... shall be accrued by a charge to income if both of the

15   following conditions are met:

16             a.    Information available prior to issuance of the financial statements indicates

17   that an asset had been impaired or that a liability had been incurred at the date of the financial

18   statements. It is implicit in this condition that it must be probable that one or more future events

19   will occur confirming the fact of the loss; and

20             b.    The amount of the loss can be reasonably estimated.

21   110.    Here, "information available prior to issuance" of the Company's fiscal first, second and

22   third quarter 2009 and all four reported quarters of 2008, made during the Class Period indicated

23   that "an asset had been impaired or that a liability had been incurred at the date of the financial

24   statements." Defendants knew of, or deliberately disregarded, this information.

25   111.    Therefore, Defendants were required to provide for the loss through a charge to income in

26   the fiscal first, second, and third quarters of 2009 and all of fiscal 2008. These financial statements

27   and announcements were knowingly and deliberately false and misleading when made for the

28   reasons stated herein.

CLASS ACTION COMPLAINT                                - 60 -

112. The Company's financial statements contained in the fiscal first, second, and third quarter 2009 quarterly reports filed with the SEC on Forms 10-Q for the quarterly periods throughout the Class Period were presented in a manner that violated the principle of fair financial reporting and the following GAAP, among others:

a. The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts No. 1).

b. The principle that financial reporting should provide information about an enterprise's financial performance during a period (FASB Statement of Concepts No. 1).

c. The principle that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Concepts No. 2).

d. The principle of completeness, which means that nothing material is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2).

e. The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Concepts No. 2).

f. The principle that disclosure of accounting policies should identify and describe the accounting principles followed by the reporting entity and the methods of applying those principles that materially affect the financial statements (APB Opinion No. 22).

g. The principle that losses be accrued for when a loss contingency exists (Statement of Financial Accounting Standards No. 5).

h. The principle that if no accrual is made for a loss contingency, then disclosure of the contingency shall be made when there is at| least a reasonable possibility that a loss or an additional loss may have been incurred (Statement of Financial Accounting Standards

CLASS ACTION COMPLAINT - 61 -

339416 V1

No. 5).

i.     The principle that contingencies and other uncertainties that affect the fairness of presentation of financial data at an interim date shall be disclosed in interim reports in the same manner required for annual reports (APB Opinion No. 28).

j.     The principle that disclosures of contingencies shall be repeated in interim and annual reports until the contingencies j have been removed, resolved, or have become immaterial (APB Opinion No. 28).

(k)    The principle that management should provide commentary relating to the effects of significant events upon the interim financial results (APB Opinion No. 28).

113.   In addition, during the Class Period, Defendants violated SEC disclosure rules:

a.     Defendants failed to disclose the existence of known trends, events or uncertainties that they reasonably expected would have a material, unfavorable impact on net revenues or income or that were reasonably likely to result in the Company's liquidity decreasing in a material way, in violation of Item 303 of Regulation S-K under the federal securities laws (17 C.F.R. 229.303), and that failure to disclose the information rendered the statements that were made during the Class Period materially false and misleading; and

b.     by failing to file financial statements with the SEC that conformed to the requirements of GAAP, such financial statements were presumptively misleading and inaccurate pursuant to Regulation S-X, 17 C.F.R. § 210.4-01(a)(1).

114.   Defendants were required to disclose in the Company's financial statements the existence of the material facts described herein and to appropriately recognize and report assets, revenues, and expenses in conformity with GAAP. The Company failed to make such disclosures and to account for and to report its financial statements in conformity with GAAP. Defendants knew, or were deliberate in not knowing, the facts which indicated that all of the Company's interim financial statements, press releases, public statements, and filings with the SEC, which were disseminated to

1   the investing public during the Class Period, were materially false and misleading for the reasons

2   set forth herein. Had the true financial position and results of operations of the Company been

3   disclosed during the Class Period, the Company's common stock would have traded at prices well

4   below that which it did.

### Applicability Of Presumption Of Reliance: Fraud-On-The-Market Doctrine

115.    At all relevant times, the market for SunPower's common stock was an efficient market for
the following reasons, among others:

116.    SunPower's stock met the requirements for listing, and was listed and actively traded on the
Nasdaq national market exchange, a highly efficient and automated market;

117.    As a regulated issuer, SunPower filed periodic public reports with the SEC and the Nasdaq;

118.    SunPower regularly communicated with public investors *via* established market
communication mechanisms, including through regular disseminations of press releases on the
national circuits of major newswire services and through other wide-ranging public disclosures,
such as communications with the financial press and other similar reporting services; and

119.    SunPower was followed by several securities analysts employed by major brokerage firm(s)
who wrote reports which were distributed to the sales force and certain customers of their
respective brokerage firm(s). Each of these reports was publicly available and entered the public
marketplace.

120.    As a result of the foregoing, the market for SunPower securities promptly digested current
information regarding SunPower from all publicly available sources and reflected such information
in SunPower stock price. Under these circumstances, all purchasers of SunPower common stock
during the Class Period suffered similar injury through their purchase of SunPower common stock
at artificially inflated prices and a presumption of reliance applies.

### NO SAFE HARBOR

121.    The statutory safe harbor provided for forward-looking statements under certain
circumstances does not apply to any of the allegedly false statements pleaded in this complaint.
Many of the specific statements pleaded herein were not identified as "forward-looking statements"

CLASS ACTION COMPLAINT                              - 63 -

339416 V1

1    when made. To the extent there were any forward-looking statements, there were no meaningful

2    cautionary statements identifying important factors that could cause actual results to differ

3    materially from those in the purportedly forward-looking statements. Alternatively, to the extent

4    that the statutory safe harbor does apply to any forward-looking statements pleaded herein,

5    Defendants are liable for those false forward-looking statements because at the time each of those

6    forward-looking statements was made, the particular speaker knew that the particular forward-

7    looking statement was false, and/or the forward-looking statement was authorized and/or approved

8    by an executive officer of SunPower who knew that those statements were false when made.

9                                    **BASIS OF ALLEGATIONS**

10   122.    Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which

11   included a review of SEC filings by SunPower, as well as regulatory filings and reports, securities

12   analysts' reports and advisories about the Company, press releases and other public statements

13   issued by the Company, and media reports about the Company, and Plaintiff believes that

14   substantial additional evidentiary support will exist for the allegations set forth herein after a

15   reasonable opportunity for discovery.

16                                       **FIRST CLAIM**

17                               **Violation Of Section 10(b) Of**
                                 **The Exchange Act And Rule 10b-5**
18                           **Promulgated Thereunder Against All Defendants**

19   123.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set

20   forth herein.

21   124.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct

22   which was intended to and, throughout the Class Period, did: (i) deceive the investing public

23   regarding SunPower's business, operations, management and the intrinsic value of SunPower

24   common stock; (ii) enable Defendants to register for sale and sell hundreds of millions of dollars in

25   SunPower stock on behalf of the Company and its early stage investors; (iii) enable SunPower

26   insiders, certain of which are named as Defendants herein, to sell tens of millions of dollars of their

27   privately held SunPower shares while in possession of material adverse non-public information

28

about the Company; and (v) cause Plaintiff and other members of the Class to purchase SunPower common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, jointly and individually (and each of them) took the actions set forth herein.

125.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for SunPower's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

126.    Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of SunPower as specified herein.

127.    These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SunPower's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SunPower and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of SunPower common stock during the Class Period.

128.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of his responsibilities and activities as a

CLASS ACTION COMPLAINT                                    - 65 -

1    senior officer and/or director of the Company was privy to and participated in the creation,

2    development and reporting of the Company's internal budgets, plans, projections, and/or reports;

3    (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other

4    Defendants and was advised of and had access to other members of the Company's management

5    team, internal reports, and other data and information about the Company's finances, operations,

6    and sales at all relevant times; and (iv) each of these Defendants was aware of the Company's

7    dissemination of information to the investing public which they knew or deliberately disregarded

8    was materially false and misleading.

9    129.    The Defendants had actual knowledge of the misrepresentations and omissions of material

10   facts set forth herein, or acted with deliberate disregard for the truth in that they failed to ascertain

11   and to disclose such facts. Such Defendants' material misrepresentations and/or omissions were

12   done knowingly or deliberately for the purpose and effect of concealing SunPower's operating

13   condition and future business prospects from the investing public and supporting the artificially

14   inflated price of its common stock. As demonstrated by Defendants' overstatements and

15   misstatements of the Company's business, operations and earnings throughout the Class Period,

16   Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged,

17   were deliberate in failing to obtain such knowledge by deliberately refraining from taking those

18   steps necessary to discover whether those statements were false or misleading.

19   130.    As a result of the dissemination of the materially false and misleading information and

20   failure to disclose material facts, as set forth above, the market price of SunPower common stock

21   was artificially inflated during the Class Period. In ignorance of the fact that market prices of

22   SunPower's publicly-traded common stock were artificially inflated, and relying directly or

23   indirectly on the false and misleading statements made by Defendants, or upon the integrity of the

24   market in which the securities trade, and/or on the absence of material adverse information that was

25   known to or deliberately disregarded by Defendants but not disclosed in public statements by

26   Defendants during the Class Period, Plaintiff and the other members of the Class acquired

27   SunPower common stock during the Class Period at artificially high prices and were damaged

28   thereby.

131.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that SunPower was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SunPower common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

132.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

133.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against Individual Defendants

134.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

135.    The Individual Defendants acted as controlling persons of SunPower within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

CLASS ACTION COMPLAINT                           - 67 -

339416 V1

136.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

137.    As set forth above, SunPower and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

138.    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

139.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

140.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

141.    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity, and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and any appropriate state law remedies to assure that the Class has an effective remedy; and

142.    Such other and further relief as the Court may deem just and proper.

CLASS ACTION COMPLAINT                                         - 68 -

339416 V1

1    **JURY TRIAL DEMANDED**

2    Plaintiff hereby demands a trial by jury.

3    Dated: November 18, 2009                    HAGENS BERMAN SOBOL SHAPIRO LLP

4

5                                               By _____
                                                        REED R. KATHREIN

6                                               Peter E. Borkon (212596)
                                                715 Hearst Avenue, Suite 202
7                                               Berkeley, CA 94710
                                                Telephone: (510) 725-3000
8                                               Facsimile: (510) 725-3001
                                                reed@hbsslaw.com
9                                               peterb@hbsslaw.com

10                                              Steve Berman
                                                HAGENS BERMAN SOBOL SHAPIRO LLP
11                                              1301 Fifth Avenue, Suite 2900
                                                Seattle, WA 98101
12                                              Telephone: (206) 623-7292
                                                Facsimile: (206) 623-0594
13                                              steve@hbsslaw.com

14                                              Lewis Kahn
                                                KAHN SWICK & FOTI, LLC
15                                              650 Poydras Street, Suite 2150
                                                New Orleans, LA 70130
16                                              Telephone: (504) 455-1400
                                                Facsimile: (504) 455-1498
17                                              lewis.kahn@kgscounsel.com

18                                              Kim E. Miller
                                                KAHN SWICK & FOTI, LLC
19                                              12 East 41st Street, 12 Floor
                                                New York, NY 10017
20                                              Telephone: (212) 696-3730
                                                Facsimile: (504) 455-1498
21                                              kim.miller@kgscounsel.com

22                                              Attorneys for Plaintiff

23

24

25

26

27

28

CLASS ACTION COMPLAINT                          - 69 -

339416 V1

**CERTIFICATION IN SUPPORT OF APPLICATION FOR LEAD PLAINTIFF**

Chengxiao Cao (name) ("plaintiff") declares, as to the claims asserted under the federal securities law, that:

      1.     Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and plaintiff is willing to serve as a lead plaintiff in this case and all other related cases that may be consolidated with it.

      2.     Plaintiff did not purchase securities of Sunpower Corporation at the direction of counsel or in order to participate in a private action under the federal securities laws.

      3.     Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

      4.     During the Class Period, plaintiff has executed transactions in the securities of Sunpower Corporation as follows. See Attached Schedule.

      5.     In the last three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

      6.     Plaintiff will not accept payment for serving as a lead plaintiff beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: ___11/ 18 /___, 2009

Chengxiao Cao

**Plaintiff**

### Chengxiao Cao Trade Data

| Purchase Date | Units | Per-Share Purchase Price |
|---|---|---|
| 10/3/2008 | 100 | $68.00 |
| 10/22/2008 | 100 | $43.00 |